IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LAKELAND PARTNERS, L.L.C.<br>d/b/a LAKELAND NURSING HOME,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 06-295C<br>(Chief Judge Damich) |

**PLAINTIFF'S SUPPLEMENTAL MOTION TO COMPEL**

NOW INTO COURT, through undersigned counsel, comes Lakeland Partners, L.L.C. d/b/a Lakeland Nursing Home, who hereby limits its motion to compel to Interrogatory Nos. 14 and 22[1] and asserts that the information requested in those interrogatories should be compelled for the following reasons:

1.

On December 20, 2007, Lakeland requested an Order from this Court, compelling defendant to respond to Lakeland's Interrogatories and Requests for Production of Documents.

2.

This Court issued an order requiring defendant to respond to Lakeland's motion to compel by January 7, 2008. On December 31, 2007, defendant provided Lakeland with responses to Lakeland's requests for production of documents, interrogatories, and requests for admissions.

---

[1] However, Lakeland maintains that its Requests for Admissions are deemed admitted by operation of law.

3.

However, defendant objected to Lakeland's 14th and 22nd interrogatories. The interrogatories provided:

Interrogatory No. 14:

> Please list any other ICE detainees, who were mentally or physically incompetent and/or could not take care of themselves, whom ICE has released from custody prior to finding a funding source for the detainees' healthcare.

Interrogatory No. 22:

> Please list the individuals whom you contend would have had authority to bind ICE and/or DIHS in contract with Lakeland for the provision of healthcare services to detainees, such as Duncan Nyanjong.

4.

Defendant objected that Interrogatory No. 14 sought irrelevant information and was unduly broad and burdensome. Defendant further responded that, while the Privacy Act (5 U.S.C. § 552a) does not cover visitors or aliens, as a matter of policy DHS treats any personally identifiable information, including detainee names, as a System of Records subject to the Privacy Act.

5.

However, as defendant noted in its response, the Privacy Act only applies to United States citizens or aliens lawfully admitted for permanent residence. *See* 5 U.S.C. § 552a(a)(2). Additionally, 5 U.S.C. § 552a(b)(11) provides that a court of competent jurisdiction can order the production of any such records. Therefore, the information sought is not privileged by the Privacy Act and, even if it were, this Court may order its

production. DHS' own internal policies cannot excuse DHS from properly responding to discovery in this litigation. Excusing an agency from properly responding to discovery due to an agency's internal policies would be contrary to the intent of the federal discovery rules.

6.

Furthermore, Interrogatory No. 14 seeks information which is clearly relevant to this litigation. If DHS/ICE has a policy of "dumping" patients like Mr. Nyanjong, that fact could show bad faith on the part of defendant in inducing Lakeland to accept Mr. Nyanjong. It could also shed light upon the procedures which were followed in those cases and, thus, whether Mr. Nyanjong was properly released from ICE custody.

7.

Accordingly, defendant should be required to provide a list of ICE detainees who were mentally or physically incompetent and/or could not take care of themselves, whom ICE has released from custody prior to finding a funding source for the detainees' healthcare.

8.

Defendant also objected that Interrogatory No. 22 was overbroad, burdensome and not specific in time period. Subject to that objection, defendant provided an evasive answer by answering as follows:

> In this case, ICE entered into the IAA with HHS/PHSB/DIHS to provide medical services for detainees. As part of that agreement DIHS enters into numerous contract on ICE's behalf to provide medical services for detainees. Accordingly, only warranted HHS/DIHS Contracting Officers are able to bind ICE and/or DIHS in contract for the provision of healthcare services to detainees.

9.

Interrogatory No. 22 is clearly not overbroad nor burdensome and is quite specific in time period. The interrogatory simply sought the person who would have had authority to bind DIHS/ICE in contract with Lakeland at the time Mr. Nyanjong was admitted to Lakeland.

10.

Defendant has admitted in its other responses to Lakeland's most recent discovery that proper procedures were utilized in admitting Mr. Nyanjong to Lakeland and in the provision of payment to Lakeland for its services. Defendant has also admitted that Mr. Seligman utilized the usual DIHS/ICE procedures for admitting Mr. Nyanjong. Defendant has further admitted that the ICE and/or DIHS official whom it contends would have had authority to contract on behalf of ICE/DIHS with Lakeland was aware that Mr. Nyanjong had been placed in Lakeland.

11.

Clearly, defendant knows the name of the individual(s) and his position with ICE/DIHS. Therefore, Lakeland requests that this Court order defendant to list the individuals whom defendant contends would have had authority to bind ICE and/or DIHS in contract with Lakeland for the provision of healthcare services to Duncan Nyanjong.

Respectfully submitted,

HYMEL DAVIS & PETERSEN, L.L.C.

s/Michael Reese Davis
Michael Reese Davis (Bar Roll No. 17529)
10602 Coursey Boulevard
Baton Rouge, Louisiana 70816
Telephone: (225) 298-8118
Facsimile: (225) 298-8119
mdavis@hymeldavis.com

**Counsel for Plaintiff Lakeland Nursing Home**

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2008, a copy of the foregoing Plaintiff's Supplemental Motion to Compel was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will also be sent to Carrie Dunsmore by operation of the court's electronic filing system.

s/Michael Reese Davis
Michael Reese Davis (Bar Roll No. 17529)
Hymel Davis & Petersen, LLC
10602 Coursey Boulevard
Baton Rouge, Louisiana 70816
Telephone: (225) 298-8118
Facsimile: (225) 298-8119
mdavis@hymeldavis.com