IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LAKELAND PARTNERS, L.L.C.,<br>d/b/a LAKELAND NURSING HOME, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-295C<br>(Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL**

Pursuant to Rule 37 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits this opposition to the motion of plaintiff, Lakeland Partners, L.L.C.'s ("Lakeland"), to compel additional responses to two of its interrogatories. Because the objections that the Government raised in its response to Interrogatory 14 were valid, and because the Government provided additional information in response to Interrogatory 22, plaintiff's motion should be denied.

**FACTS**

On November 19, 2007, plaintiff served defendant with its second request for production of documents, request for admissions, and interrogatories ("plaintiff's discovery"). On November 20, 2007, plaintiff filed a motion to extend the discovery period by thirty days. On December 4, 2007, the Court granted plaintiff's motion, and extended the fact discovery period through December 31, 2007. Defendant provided plaintiff with responses to its discovery on December 31, 2007.

On January 3, 2008, plaintiff filed a motion to compel defendant's response to two of its interrogatories. The two interrogatories at issue (and the Government's answers) are as follows:

INTERROGATORY NO. 14:

Please list any other ICE detainees, who were mentally or physically incompetent and/or could not take care of themselves, whom ICE has released from custody prior to finding a funding source for the detainees healthcare after release.

Response:

Defendant objects that this interrogatory seeks information not relevant to any claim or defense of any party, and that this interrogatory is unduly broad and burdensome. Furthermore, DHS does not release detainee's names because of the Privacy Act of 1974 ("Privacy Act"), 5 U.S.C. §552a. The Privacy Act provides statutory privacy rights to U.S. citizens and Legal Permanent Residents (LRP). While the Privacy Act does not explicitly cover visitors or aliens, as a matter of DHS policy, any personally identifiable information, including detainee names, that is collected, used, maintained and/or disseminated in connection with a mixed system by DHS shall be treated as a System of Records subject to the Privacy Act, regardless of whether the information pertains to a U.S. citizen, LPR, visitor, or alien. DHS components handle non-U.S. person personally identifiable information held in mixed systems in accordance with the fair information practices, as set forth in the Privacy Act.

. . .

INTERROGATORY NO. 22:

Please list the individuals whom you contend would have had authority to bind ICE and/or DIHS in contract with Lakeland for the provision of healthcare services to detainees, such as Duncan Nyanjong.

Response:

The Government objects to this question as overbroad, burdensome and not specific in time period. Subject to that objection, defendant responds as follows: In this case, ICE entered into the IAA with HHS/PHSB/DIHS to provide medical services for detainees. As part of that agreement DIHS enters into numerous contracts on ICE's behalf to provide medical services for detainees. Accordingly, only warranted HHS/DIHS Contracting Officers are able to bind ICE and/or DIHS in contract for the provision of healthcare services to detainees.

Defendant's Response To Plaintiff's Interrogatories at 7, 10.

On January 8, 2008, plaintiff and defendant discussed the former's objection to the Government's response as well as the motion to compel, in an attempt to resolve the issues without the Court's involvement. The parties were unable to come to any agreement with regards to Interrogatory 14. However, when defendant reiterated its objection that Interrogatory

22 was overbroad, particularly as it was not limited to any specific time period, plaintiff agreed to allow defendant to limit its response to the individuals who would have had authority to bind ICE and/or DIHS at the time that Mr. Nyanjong was placed at Lakeland Nursing home (i.e., in 2004). On January 22, 2008 defendant provided plaintiff with its amended response to Interrogatory 22. See Defendant's Amended Response to Plaintiff's Request for Interrogatory 22, attached to this response at Exhibit A. Thus we understand that Interrogatory 22 is no longer at issue.

## ARGUMENT

### I. The Court Should Deny Plaintiff's Motion To Compel A Response To Interrogatory Number 14

Interrogatory 14 asks the Government to "list any other ICE detainees, who were mentally or physically incompetent and/or could not take care of themselves, whom ICE has released from custody prior to finding a funding source for the detainees' healthcare after release." Defendant objected "that this interrogatory seeks information not relevant to any claim or defense of any party, and that this interrogatory is unduly broad and burdensome."[1] Because this response was valid, the Government should not be compelled to provide a further answer to this Interrogatory.

#### A. Interrogatory Number 14 Seeks Information Not Reasonably Calculated To Lead To Admissible Evidence

Plaintiff's Interrogatory Number 14 seeks information not reasonably calculated to lead to admissible evidence. The issue in this case is whether the Government entered into a contract

---

[1] Defendant also objected to this response upon the ground that providing such a list could violate the Privacy Act. Defendant concedes, however, that this concern could be overcome, if necessary, through the use of a protective order.

with Lakeland Nursing Home to provide health care to one detainee, Mr. Duncan Nyanjong, and, if so, whether that contract was "permanent" and included Mr. Nyanjong's care after he had been released from government custody. Whether the Government may or may not released other detainees has no bearing on whether the government contracted to care for a specific detainee, Mr. Nyanjong.[2]

In its motion, plaintiff suggests that the information it seeks is "clearly relevant" because "if DIHS/ICE has a policy of 'dumping' patients like Mr. Nyanjong, that fact could show bad faith on the part of defendant in inducing Lakeland to accept Mr. Nyanjong. It could also shed light upon the procedures which were followed in those cases, and thus, whether Mr. Nyanjong was properly released from ICE custody." Pl. Motion at pg. 3. This statement, however, concerns allegations completely unrelated to the issues in this case. Plaintiff's complaint alleges only that the Government breached a contract with Lakeland. There are no counts in the complaint relating to "dumping" patients, to "bad faith," or to whether Mr. Nyanjong was improperly released from Government custody.[3] See Plaintiff's Complaint, attached to this brief as Exhibit B. Because this information is not reasonably calculated to lead to admissible evidence, the Government should not be required to provide the additional information to plaintiff in response to Interrogatory Number 14.

---

[2] Moreover, ICE avers that it is under no obligation to find funding sources for healthcare for people not in Government custody, as the Interrogatory implies.

[3] In fact, if such allegations had been in Lakeland's complaint the Government would likely have moved to dismiss such allegations for lack of subject matter jurisdiction or lack of standing.

B. Interrogatory Number 14 Is Unduly Broad And Burdensome

Moreover, even if Interrogatory 14 were proper, it is unduly broad and burdensome. Quite simply, the Government cannot provide the information sought by plaintiff, because it does not have any list of "ICE detainees, who were mentally or physically incompetent and/or could not take care of themselves, whom ICE has released from custody prior to finding a funding source for the detainees' healthcare." As explained in the declaration of John Tsoukaris, Unit Chief for the Executive Information Unit (EIU) for ICE's Detention and Removal Operations (DRO), the Government does not keep records of this kind, and to create such a list would be unduly burdensome. See Declaration of John Tsoukaris, attached to this brief as Exhibit C.

ICE uses a database to track the aliens in its custody called the Deportable Alien Control System ("DACS"). Tsoukaris Decl. at ¶ 3. DACS contains records for more than 4,846,000 aliens, of which approximately 1,662,000 are in government custody. Id. DACS captures biographical data about deportable aliens, tracks case information for aliens in removal proceedings, and captures case dispositions (i.e., whether an alien is removed or not). Id. at ¶ 4. There is a medical code alert that may be used to indicate that an alien has a medical condition and/or is insane, but that determination is not specific, and is not necessarily made by a medical professional. Id. at ¶ 5. Finally, the system cannot be searched by this criterion. Id. at ¶ 6. Capturing a list of detainees who were released from custody and were mentally or physically incompetent would require hundreds of thousands of immigration files to be printed and manually searched. Id. at ¶¶ 4 and 7. Moreover, because the health-related comments are not required and not entered into by medical professionals, the information from the files would

likely not have the correct information regarding detainee health. Id. at ¶ 6. Accordingly, creating such a list would be unduly burdensome and time-consuming.

"[C]ourts have for years adopted a proportionality approach that balances the burden on the interrogated party against the benefit that having the information would provide to the party submitting the interrogatory." 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2174 (2nd ed. 1987); accord Halder v. International Tel. & Tel. Co., 75 F.R.D. 657, 658 (D.C.N.Y.1977) (answers to interrogatories requesting data on every computer programmer hired by large conglomerate in previous seven years would not be compelled in view of interrogatories' burdensomeness); Deering Milliken Research Corp. v. Tex-Elastic Corp., 320 F.Supp. 806, 811 (D.C. S.C. 1970) (interrogatories were unduly burdensome and oppressive, where they would require licensor to meticulously examine everything in licensor's files for anything that mentioned or pertained to any apparatus or process used by any licensee and believed by licensor to be infringing.). In this case, the burden on the Government of providing such information would greatly outweigh the value of the information sought, particularly where, as here, the information sought does not bear on any issue in this case. Accordingly, the Government respectfully requests that the Court deny plaintiff's motion to compel any additional response to Interrogatory Number 14.

## II. Defendant Has Provided Plaintiff With A Response To Interrogatory Number 22

As discussed above, defendant objected to plaintiff's Interrogatory Number 22 because it was not limited to a particular time period. Based upon discussions with undersigned counsel in which plaintiff agreed to accept an answer limiting the response to 2004, the time at which Mr. Nyanjong was placed at Lakeland nursing home, defendant provided plaintiff with an amended

response to Interrogatory 22 on January 22, 2008. Therefore, plaintiff's motion to compel further response to Interrogatory 22 is moot.[4]

**CONCLUSION**

For the foregoing reasons, defendant respectfully requests that this Court deny plaintiff's motion.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

[4] We also note that plaintiff did not contact defendant prior to filing its motion as required by RCFC 37 to obtain the material without Court action. If plaintiff had done so, the portion of its motion dealing with Interrogatory 22 could have been avoided. Indeed, the agreement discussed above was reached when the Government contacted plaintiff's counsel after plaintiff filed its motion.

/s/Carrie A. Dunsmore

CARRIE DUNSMORE
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Classification Unit, 8th Floor
Washington, D.C. 20530
Tel: (202) 305-7576

January 22nd , 2008

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on this 22nd day of January 2008, a copy of the Defendant's Opposition to Plaintiff's Second Motion to Compell was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Carrie A Dunsmore
Carrie A. Dunsmore