IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LAKELAND PARTNERS, L.L.C.,<br>d/b/a LAKELAND NURSING HOME, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-295C<br>(Judge Sweeney) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

STEVEN J. GILLINGHAM
Assistant Director

CARRIE A. DUNSMORE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………...……………..…………………iii

INDEX TO APPENDIX……………………………………………………………………..v

MEMORANDUM…………………………...…………………………………………………1

STATEMENT OF THE ISSUES………………………………………………………………1

STATEMENT OF THE CASE……………………………………………………………….2

I. Nature Of The Case ………………………………………………………………2

II. Statement Of Facts……………………………………………………...………2

ARGUMENT………………………………………………………………………………...4

I. Standard Of Review……………………………………………………………….4

II. The Government Is Not Obliged To Pay For Detainees Outside Of Custody…………….5

III. The Government Did Not Enter Into A Contract Obliging It To Pay For Mr. Nyanjong's Health Care Once He Was Released From Government Custody…………………………………………………………………………7

A. The Request For Medical Eligibility Is Not A Contract…...……………………...8

B. Commander Seligman Did Not Have Authority To Bind The Government In Contract……………………………………………………………………..10

CONCLUSION……………………………………………………………………...……14

## TABLE OF AUTHORITIES

### CASES

American General Leasing, Inc. v. United States,
587 F.2d 54 (Ct. Cl. 1978) .......... 8

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) .......... 4

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) .......... 4

Cessna Aircraft Co. v. Dalton,
126 F.3d 1442 (Fed. Cir. 1997) .......... 13

City of El Centro v. United States,
922 F.2d 816 (Fed. Cir. 1990) .......... passim

Doe v. United States,
48 Fed. Cl. 495 (2000) .......... 10

Essen Mall Properties v. United States,
21 Cl. Ct. 430, 445 (1990) .......... 11

Federal Crop Ins. Corp. v. Merrill,
332 U.S. 380 (1947) .......... passim

First Federal Lincoln Bank v. United States,
54 Fed. Cl. 446 (2002) .......... 10, 11

Flexfab, L.L.C. v. United States,
424 F.3d 1254 (Fed. Cir. 2005) .......... 11

Garza v. United States,
34 Fed. Cl. 1 (1995) .......... 7, 8

Girling Health Sys., Inc. v. United States,
949 F.2d 1145 (Fed. Cir. 1991), .......... 7

Grundy v. United States,
2 Cl. Ct. 596, 599 (1983) .......... 12

Harbert/Lummus Agrifuels Projects v. United States,
142 F.3d 1429 (Fed. Cir. 1998) .......... 12

Heckler v. Community Health Serv. of Crawford County,
467 U.S. 51 (1984)....................11

Hercules, Inc. v. United States,
516 U.S. 417 (1996)....................13

Jarvis v. United States,
45 Fed. Cl. 19 (1999)....................13

Monarch Assurance P.L.C. v. United States,
244 F.3d 1356 (Fed. Cir. 2001)....................11

Russell Corp. v. United States,
210 Ct. Cl 596 (1976)....................9

Seal-Flex, Inc. v. Athletic Track and Court Const.,
98 F.3d 1318 (Fed. Cir. 1996)....................4

Shaw v. United States,
8 Cl. Ct. 796, 799 (1985)....................8

Starflight Boats v. United States
48 Fed. Cl. 592, 598 (2001)....................11

Total Med. Mgmt., Inc. v. United States,
104 F.3d 1314 (Fed.Cir.1997)....................10

Trauma Serv. Group v. United States,
104 F.3d 1321 (Fed.Cir.1997)....................10, 12

**STATUTES**

10 U.S.C. § 2306(g)....................13

31 U.S.C. § 1341....................13

# INDEX TO DEFENDANT'S APPENDIX

**Document** **Page Number**

Excerpt from Department of Homeland Security, Immigration and Customs Enforcement website, http://www.ice.gov/about/operations.htm........................................................1

Interagency Agreement Between Department of Homeland Security, Immigration and Customs Enforcement and Department of Health and Human Services.....................................................4

Excerpts from Immigration Health Services Provider Handbook..............................................13

National Mental Health Care Coordinator Position Description.................................................18

Record of Deportable/Inadmissable Alien for Duncan Nyanjong...............................................21

Notice to Appear for Removal Proceedings for Mr. Nyanjong ..................................................22

December 20, 2000 E-mail from Mark Murphy re: Mr. Nyanjong's Immigration Hearing ........23

December 28, 2000 E-mail from Jacinto Garrido re: Candidates for CCC.................................24

January 9, 2001 Record of Persons and Property Transferred.....................................................26

December 28, 2000 Email From Parker Evatt Accepting Mr. Nyanjong at Columbia Care Center...........................................................................................................27

Janaury 22, 2004 email from Jay Seligman re Mr. Nyanjong.....................................................28

Request for Medical Eligibility Form for Mr. Nyanjong............................................................29

Treatment Authorization Request to Place Mr. Nyanjong at Lakeland........................................31

Bills and Invoices re Mr. Nyanjong's Care at Lakeland..............................................................33

February 28, 2005 Email from William Cleary re: Releasing Mr. Nyanjong from GovernmentCustody..........................................................................................39

April 4, 2005 Email from Michael Phillips re Releasing Mr. Nyanjong from Government Custody.........................................................................................42

April 1, 2005 Documents From Immigration and Customs Enforcement Releasing Mr. Nyanjong from Government Custody ............................................................43

Email from Commander Seligman re Releasing Mr. Nyanjong
from GovernmentCustody..........................................................................................47

Declaration of Commander Seligman...........................................................................................48

Excerpts from November 2, 2007 Deposition of Commander Seligman.....................................50

Excerpts from November 16, 2007 Deposition of Henry Allen Cooley.......................................54

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LAKELAND PARTNERS, L.L.C.,<br>d/b/a LAKELAND NURSING HOME, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-295C<br>(Judge Sweeney) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(b) of the Rules of the United States Court of Federal Claims (RCFC) order, we respectfully request the Court to enter summary judgment in favor of the United States in the above-referenced cases because there is no genuine issue of any material fact and the United States is entitled to judgment as a matter of law. In support of this request, we rely upon plaintiff's complaints, our proposed findings of uncontroverted facts filed separately pursuant to RCFC 56(h)(1), and the following memorandum with attached appendix.[1]

MEMORANDUM

STATEMENT OF THE ISSUES

1. Whether the Government is obliged to pay for the health care of a former Immigration and Customs Enforcement ("ICE") detainee once he is released from Government custody?

2. Whether the Government entered into a contract with plaintiff, Lakeland Partners, LLC ("Lakeland") when:

[1] "A__" refers to a numbered page in Defendant's Appendix.

A. the document Lakeland relies upon is not a contract, and

B. the Government employee who allegedly entered into contract with Lakeland was not a contracting officer?

## STATEMENT OF THE CASE

I. Nature Of The Case

Lakeland alleges that the United States Immigration and Customs Enforcement and the Division of Immigration Health Services ("DIHS") breached a contract with plaintiff when it refused to continue to pay for the health care costs of a detainee, Duncan Nyanjong, after he had been released from government custody. We demonstrate below that the Government was under no obligation to pay for the health care of a detainee released from Government custody, and the Government did not enter into a contract to "permanently" pay for Mr. Nyanjong's health care.

II. Statement Of Facts

The Department of Homeland Security, Immigration and Customs Enforcement (ICE) is responsible for promoting public safety and national security through the enforcement of United States immigration laws that all removable aliens depart the United States. A1. ICE is responsible for transporting aliens, managing them while in custody and waiting for their cases to be processed, and removing unauthorized aliens from the United States when so ordered. Id. ICE has entered into an interagency agreement with the Department of Health and Human Services, Health Resources and Services Administration, Bureau of Primary Health Care. A4-12. The Interagency Agreement provides that a division of Health and Humans Services, the Division of Immigration Health Services (DIHS), will served as the medical authority for ICE and is

responsible for providing or arranging the most clinically appropriate and cost effective health care services for ICE detainees. Id.

On November 30, 2000, ICE, then known as Immigration and Naturalization Services, began removal proceedings against an alleged illegal immigrant named Duncan Nyanjong in Buffalo, New York. A22. On December 19, 2000 an immigration court declared that Mr. Nyanjong was not competent to stand trial because of mental health issues. A23. In January 2001, Mr. Nyanjong was transferred to the Columbia Care Center hospital in South Carolina, to receive treatment for his mental health issues. A26.

The United States Public Health Service is tasked by ICE to provide direct mental health and short stay unit care to detainees. A18. From July 2002 to May 2006, Commander Jay Seligman of the United States Public Health Service was employed by DIHS as the National Mental Health Coordinator. A51. In that position his responsibilities included coordinating mental health and medical care for detainees in the custody of ICE. A48. In 2004, Commander Seligman began to become concerned about the cost of treating Mr. Nyanjong at the Columbia Care Center. A28, A52-53. In order to contain costs, Commander Seligman arranged for Mr. Nyanjong to be transferred from Columbia Care Center to Lakeland Nursing Home. A29,31.

On April 19, 2004, Commander Seligman submitted a Request For Medical Eligibility Determination for Duncan Nyanjong to Lakeland Nursing Home. A29. From May, 2004 through March, 2005, Mr. Nyanjong was treated at Lakeland Nursing home and the United States Government, through DIHS, paid for his health care. A33-38.

On April 1, 2005, ICE, having determined that Mr. Nyanjong was no longer a danger to the community, A42, released Mr. Nyanjong from government custody. A43-

46. On April 14, 2006, Lakeland filed a complaint in the Court of Federal Claims alleging that DIHS and ICE breached their contract with Lakeland. Pl. Compl. Lakeland seeks $49,500 in costs and expenses incurred while caring for Mr. Nyanjong after he was released from Government custody. Id.

## ARGUMENT

### I. Standard of Review

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-51 (1986). The moving party bears the initial burden of establishing the absence of any disputes of material fact. Seal-Flex, Inc. v. Athletic Track and Court Const., 98 F.3d 1318, 1321 (Fed. Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When the movant has met its initial burden, the non-movant must respond with sufficient evidence to show that there is a material factual dispute and that, on the non-movant's evidence, the movant is not entitled to judgment as a matter of law." Id. Alternatively, if the moving party can show that there is an absence of evidence to support the non-moving party's case, then the burden shifts to the non-moving party to proffer such evidence. Celotex, 477 U.S. at 325. The Supreme Court has emphasized that the "[s]ummary judgment procedure is not properly regarded as a disfavored procedural shortcut but, rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action . . . .'" Celotex, 477 U.S. at 327 (citations omitted).

## II. The Government Is Not Obliged To Pay For Detainees Outside Custody

Plaintiff cannot dispute that the Government is under no obligation to pay for health care of individuals after they have been released from Government custody. Indeed, the mission of the Department of Immigration Health Services is explicitly limited to those undocumented migrants detained by the United States Immigrations and Customs Enforcement. In 2004, when Mr. Nyanjong was placed at Lakeland Nursing home, ICE and the Department of Health and Human Services, Health Resources and Services Administration, Bureau of Primary Health Care (BPHC) entered into an Interagency Agreement setting forth the responsibilities ICE and DIHS "regarding the provision of on-site health care and other health-related services to undocumented aliens detained at various locations by the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE)." (emphasis added). A4-12. The agreement provides that DIHS, "will serve as the medical authority for ICE and provide all of the services set out in the agreement, as well as management, direction, coordination, and oversight of these services." A4. DIHS's responsibilities are "to provide on-site health care for detained aliens or will arrange for off-site services, as appropriate … DIHS will coordinate payment for all off-site services arranged by and authorized by DIHS." A5. ICE's responsibilities are: "to reimburse BPHC for DIHS's delivery of all on-site health care and other health-related services provided to or arranged for undocumented aliens in the custody of ICE… ICE agrees to furnish and maintain the medical facility space and security necessary for DIHS to provide health care services to detained aliens." A4 (emphasis added).

DIHS policy manuals clearly state the limits of DIHS's authority to pay only for detainee's health care. See, e.g., The Immigration Health Services Provider Handbook A14. The handbook answers the question "Who is Covered?" thusly: "The Immigration and Nationality Act (INA), Section 234, INA and the Public Health Service Act (PHSA), Section 322, PHSA provide for cooperative arrangements between ICE and the PHS (Public Health Service) for the medical inspection of aliens within and outside of the United States and for the provision of services by PHS personnel to aliens being detained by ICE." A14-15 (emphasis added). "Coverage is effective on the first day that an individual is places in the custody and under the jurisdiction of DHS/BTSD," and "[c]overage ends on the day that DHS/BTSD releases the detainee from its custody as indicated in DACS." A15. (emphasis added).

A "detainee" is defined as "An individual who is in the custody and under the jurisdiction of the Department of Homeland Security/Border and Transportation of Security Directorate." A17. "To be eligible for [DHIS] care, the following must apply:

- The individual must be in DHS/BTSD custody as indicated by a valid alien number in the Detained Alien Control System (DACS) or a valid tracking number assigned by the Border Patrol.

- This assigned tracking number is a unique detainee identifier that can be correlated to a particular detainee and the Sector or Sector/Station that had custody of the detainee.

- All detainees provided to network providers must be referred by DHIS for treatment or consultation.

- The detainee will be in custody and will arrive with a DHS/BTSD officer or Federal Marshall that has been arranged by the local DHS/BTSD facility or correctional institution.

- The detainee will have DHIS Treatment Authorization Request form identifying and requesting the specific treatment and/or consultation."

A14 (emphasis added). DHIS "will verify DHS/BTSD custody status through the DACS before making any benefit payments on a claim. If an individual is not eligible, according to DACS, DHIS will deny the claim." Id. In sum, as a matter of law, DIHS cannot pay for the health care of individuals who have been released from Government custody.

III. The Government Did Not Enter Into A Contract Obliging It To Pay For Mr. Nyanjong's Health Care Once He Was Released From Government Custody

Because the Government was under no obligation to pay for Mr. Nyanjong's health care once he was released from Government custody, in order to succeed on the merits of this case, plaintiff must show that the Government entered into a contract to pay for Mr. Nyanjong's health care after his release from custody. Plaintiff cannot do so.

To establish the existence of a contract, whether express or implied-in-fact, plaintiff must show:

> (1) that there was an unambiguous offer to contract, upon specific terms;
>
> (2) that there was an unambiguous acceptance of that offer;
>
> (3) that both parties intended to enter into a contract, often called a mutuality of intent; and
>
> (4) that the United States received consideration.

Garza v. United States, 34 Fed. Cl. 1, 14 (1995) (emphasis in original). See, e.g., City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990), cert. denied, 111 S. Ct. 2851 (1991); Girling Health Sys., Inc. v. United States, 949 F.2d 1145, 1146-47 (Fed. Cir. 1991), cert. denied, 112 S. Ct. 1482 (1992). Further, "when the United States is a party, an additional requirement is added: the Government official, whose words or

conduct are relied upon, must have actual authority to bind the Government in contract." Garza, 34 Fed. Cl. at 14 (citing Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947)); El Centro, 922 F.2d at 820).

To satisfy this burden, Lakeland must prove "facts that show or suggest in some manner an agreement between the parties, a meeting of the minds and a mutual consent to be bound." Shaw v. United States, 8 Cl. Ct. 796, 799 (1985) (emphasis added). In light of the binding precedent that applies in this circuit, e.g., El Centro, 922 F.2d at 820, these requirements are not mere "formalities" that can be ignored by this Court. Lakeland cannot meet this burden, and accordingly, the Court should grant summary judgment for the defendant.

A. The Request For Medical Eligibility Determination is Not A Contract

Plaintiff's complaint states that the April 19, 2004 "Request For Medical Eligibility Determination" ("the Form") is a contract between Lakeland and ICE/DHIS. Pl. Compl. at ¶ 26.[2] The complaint states that this document "unequivocally stated" that Mr. Nyanjong's care would be "permanent," id., presumably referring to line H of the document, in which the Commander Seligman indicated that he was "requesting nursing home placement" permanently, rather than temporarily. There can be no material dispute that this document does not constitute a binding contract with the United States Government. The document is titled "Request For Medical Eligibility," not a "contract"

[2] Lakeland also alleges that Commander Jay Seligman, who signed the request for admission for, represented that the Government would permanently pay for Mr. Nyanjong's heath care. However, such a representation, if made, is insufficient to bind the Government in contract, particularly because Federal Acquisition Regulation (FAR) 2.101 requires procurement contracts such as the one at issue in this case to be "in writing" unless "otherwise authorized." See, e.g., American General Leasing, Inc. v. United States, 587 F.2d 54, 58 (Ct. Cl. 1978).

or "agreement." A29. Neither party signed the document.[3] Id. The document contains no specific terms, nor does it discuss consideration in any way. In Russell Corp. v. United States, 210 Ct. Cl. 596, 537 F.2d 474 (1976), the Court of Claims set out the elements of an express contract: "For there to be an express contract, the parties must have intended to be bound and must have expressed their intention in a manner capable of understanding. A definite offer and an unconditional acceptance must be established." (Emphasis added). In this case, where the two page Form does not indicate the parties' intentions in any way, and does not contain any of the basic elements of a contract, Lakeland cannot establish the existence of a express contract between it and the United States.

Moreover, during his deposition, the administrator of Lakeland Nursing Home, Henry Allen Cooley, explained that in the general practice of Lakeland, a Request For Medical Eligibility is not considered to be a contract. Mr. Cooley stated that at the time Mr. Nyanjong was admitted to Lakeland Nursing Home, a potential applicant to a nursing home would fill out the Request For Medical Eligibility form and transmit it to Lakeland. A58-59.[4] Lakeland would review the Form and determine whether Lakeland had the capability to care for the patient, and whether there was an available bed for the patient. A59. Mr. Cooley testified that at times Lakeland would not accept a patient after receiving their Request For Medical Eligibility Form, A64-65, and that the Request For Medical Eligibility Form "doesn't guarantee a spot in the nursing home." A67-69. If

[3] No one from Lakeland signed the document. Commander Seligman filled out this document on behalf of the Government, but clearly crossed out the designation "Responsible Party Signature" on line I of the document.

[4] Mr. Cooley referred to the Request For Medical Eligibility Determination Request as a form 90-L, A63. The Request is clearly labeled as "Form 90-L" in the top left corner. A29.

Lakeland wishes to offer admission to a patient, the patient would be provided an admission packet containing the terms and conditions of admission, as well as a separate agreement which the resident or representative must sign to indicate their agreement to the terms and conditions. A62-63. Although Mr. Cooley asserted that "in this particular case" (i.e., Mr. Nyanjong's case) the Request For Medical Eligibility form was a contract, A65, it is clear that his belief was not in keeping with the practice of Lakeland, nor is it consistent with the fundamental of contract formation, which as we have explained, requires an offer of certain terms, an acceptance of these terms, and an intent to contract.

B. Commander Seligman Did Not Have Authority To Bind The Government In Contract

Moreover, there is no contract in this case because Jay Seligman, the Government employee who placed Mr. Nyanjong at Lakeland, did not have the authority to bind the United States in contract. In order to recover based upon a contract with the United States, a plaintiff must show not only show mutuality of intent, consideration, and lack of ambiguity in offer and acceptance, but "[i]n addition, plaintiff must show that the government agent whose conduct was relied upon had actual authority to bind the government in contract." Doe v. United States, 48 Fed. Cl. 495, 501 (2000) (citing City of El-Centro, 922 F.2d at 820).

In order to prove the existence of a contract with the United States, plaintiff therefore must demonstrate that Commander Seligman had actual authority to bind the United States in contract. First Federal Lincoln Bank v. United States, 54 Fed. Cl. 446, 452 (2002) (citing Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997)); Total Med. Mgmt., Inc. v. United States, 104 F.3d 1314, 1319 (Fed. Cir. 1997)). "'Government employees hold express actual authority to bind the government in

contract only when the Constitution, a statute, or a regulation grants them such authority in unambiguous terms.'" First Federal Bank, 54 Fed. Cl. at 452 (quoting Starflight Boats v. United States, 48 Fed. Cl. 592, 598 (2001)).

Contracts entered into by Government personnel who lack authority to bind the Government are unenforceable. City of El Centro, 922 F.2d at 820-21; see also Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1263 (Fed. Cir. 2005) ("Surely the assurances from a government agent, having no authority to give them, cannot expose the government to risk of suit for the nonperformance of an obligation that it did not intentionally accept."). When a Federal employee exceeds his or her authority, the Government can "disavow the [agent's] words and is not bound by an implied contract." Essen Mall Properties v. United States, 21 Cl. Ct. 430, 445 (1990). The United States Court of Appeals for the Federal Circuit has explained rationale for this rule as follows:

> The United States Government employs close to three million civilian employees. If all Government employees could, of their own volition, enter into contracts obligating the Government, then federal expenditures would be wholly uncontrollable.

Monarch Assurance P.L.C. v. United States, 244 F.3d 1356, 1360 (Fed. Cir. 2001) (footnote omitted). Accordingly, as the Supreme Court has made clear, "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority" even if "the agent himself may have been unaware of the limitations upon his authority." Federal Crop Ins. Corp., 332 U.S. at 384.

A plaintiff asserting the existence of a contract with the United States thus bears the burden of establishing that the person or people upon whose alleged promises or representations the plaintiff relied had actual contracting authority. Heckler v.

Community Health Serv. of Crawford County, 467 U.S. 51, 63 (1984); Grundy v. United States, 2 Cl. Ct. 596, 599 (1983) (holding that a "claimant for money damages for breach of contract must plead and prove that the Government officer, who supposedly entered into the contract with the claimant, had the actual authority to appropriate Government funds for such purpose"). Accordingly, to prove a valid contract with the United States, plaintiff must demonstrate that Commander Seligman, the individual who allegedly entered into a contract with Lakeland, possessed the authority to do so. Federal Crop Insurance Corp., 332 U.S. at 384; Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1432-33 (Fed. Cir. 1998); Trauma Service Group, 104 F.3d at 1325; City of El Centro, 922 F.2d at 820-21.

In this case, Commander Seligman did not have any authority to bind the Government and, accordingly, the United States is entitled to summary judgment in this matter. Plaintiff alleges that Jay Seligman was the contracting officer in this case. Pl. Compl. at ¶ 31. However, Commander Seligman is not a contracting officer with authority to bind the United States in contract. See Declaration of Jay Seligman at 5-6. A49. Moreover, there can be no dispute that no one at ICE or DIHS could have authority to enter into a contract to permanently pay for Mr. Nyanjong's health care, because no one at DIHS or ICE could authorize a payment for a detainee after he was released from Government custody. As discussed above, in order to be entitled to health care from DIHS, an individual "must be in DHS/BTSD custody as indicated by a valid alien number in the Detained Alien Control System (DACS) or a valid tracking number assigned by the Border Patrol." A14. DHIS may not provide health care to individuals that are not in Government custody, and therefore any contract with Lakeland that

promised to do would be void as to that provision. See, e.g., Federal Crop Insurance Corp., 332 U.S. at 384.

Finally, even if otherwise enforceable, the open-ended nature of Lakeland's alleged "contract" would violate the Anti-Deficiency Act. As discussed above, plaintiff alleges that the Government promised Lakeland that Mr. Nyanjong's care would be "permanent." The Anti-Deficiency Act bars a Federal employee or agency from entering into a contract for future payment of money in advance of, or in excess of, an existing appropriation. 31 U.S.C. § 1341. By its terms, the Anti-Deficiency Act restricts the ability of the Government to enter into multi-year contracts because funds generally cannot be obligated beyond the current fiscal year. Cessna Aircraft Co. v. Dalton, 126 F.3d 1442, 1449 (Fed. Cir. 1997)[5]. Consequently, no Government employee would have possessed the authority to bind the Government to "permanently pay" for Mr. Nyanjong's health care in the absence of specific authorization for such a "permanent" undertaking. Hercules, Inc. v. United States, 516 U.S. 417, 427 (1996); Jarvis v. United States, 45 Fed. Cl. 19, 20 (1999) (discussing Hercules and holding that "[o]pen-ended liabilities would violate the Anti-Deficiency Act . . . and [are ] unauthorized as a matter of law."). Because plaintiff shows no authorization for such a permanent contract, the "contract" cannot be enforced.

---

[5] A limited exception exists for military procurement contracts under 10 U.S.C. § 2306(g), which permits the Government to enter into specified military procurement contracts with performance periods of up to five years, and a option to extend performance by a period not exceeding three years. If funds are not in fact appropriated in a subsequent fiscal year, section 2306(g)(3) provides that the "contract shall be canceled or terminated." Cessna, 126 F.3d at 1449-50.

CONCLUSION

For the above reasons, we respectfully request that the Court grant our motion for summary judgment.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

/s/Carrie A. Dunsmore
CARRIE A. DUNSMORE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tel: (202) 305-7576
Fax: (202) 514-8624
Attorneys for Defendant

March 18, 2008

Certificate of Filing

I hereby certify that on this 18th day of March, 2008, a copy of "Defendant's Motion for Summary Judgment" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Carrie A. Dunsmore
Carrie A. Dunsmore