**U.S. Department of Homeland Security**
**Bureau of Immigration and Customs Enforcement**

130 Delaware Avenue
Buffalo, New York 14202

August 15, 2003

MEMORANDUM

FROM: William M. Cleary
Acting Field Director
Buffalo, New York

TO: Wesley Lee
Acting Chief
Eastern Operations Branch
S. Burlington, Vermont

SUBJECT: Duncan NYANJONG
A76 480 523

Reference is made to the case of Duncan Nyanjong, A76 480 523, citizen of Kenya. Bureau of Immigration and Customs Enforcement (ICE) records indicate that the subject entered the United States on an unknown date at an unknown place.

On November 29, 2000, the Oneida County Department of Social Services contacted the Bureau advising our agents that the subject was residing in a motel in the county. They further advised our agents that he may have violent tendencies and that he was the subject of an order of protection. NCIC revealed a conviction for criminal mischief with intent to damage property.

On November 30, 2000, ICE agents arrested the subject at his motel. He reacted violently, kicking and spitting at the arresting officers. Throughout his processing, Nyanjong babbled incoherently and often had conversations with imaginary subjects. The subject was served with a notice to appear and placed into custody at the Buffalo Federal Detention Facility (BFDF). A hearing was scheduled for December 08, 2000.

Due to Nyanjong's mental state, the BFDF medical staff evaluated him. He was found to be delusional and a potential threat to himself and others. The Immigration Judge was advised of the subject's mental state. The IJ refused to hear the case until the alien was given a complete evaluation from a competent medical authority. Nyanjong's behavior improved significantly while at the BFDF. The IJ agreed to move forward with the case.

PENGAD 800-631-6989 Seligman 2 11/2/07 &

Blumberg No. 5208 EXHIBIT D

On December 12, 2000, the subject appeared before the Immigration Judge. During the hearing, the subject claimed that he was a U.S. citizen and requested attorney representation. The case was reset to December 19, 2000.

On December 19, 2000, Nyanjong again appeared before the Immigration Judge. During the hearing he claimed that he was being represented by the Attorney General of the United States. The IJ refused to continue with the case until the ICE provided medical evidence that Nyanjong understood the nature of the proceedings against him.

On or about January 09, 2001, Nyanjong was transferred to the Columbia Care Center for psychiatric treatment and his case was administratively closed until such time that he was mentally competent. The subject has been there ever since.

Lieutenant Commander Jay Seligman of the U.S. Public Health Service (USPHS) contacted Nyanjong's case officer in Buffalo. LCDR Seligman inquired as to whether ICE would release Nyanjong from the Columbia Care Center, as he believes that the subject will never be competent enough to understand the nature of his proceedings. Due to the subject's HIV affliction, according to LCDR Seligman, he is eligible for certain State programs that would pay for his housing and treatment. He is hoping to place him into a nursing home. The Columbia Care Center currently costs ICE approximately $350.00 per day. I advised LCDR Seligman that we needed a full psychological examination in order to make a determination.

According to Nyanjong's psychiatric examination, he has been diagnosed with HIV dementia with a history of mania. According to the examination, the treating physician recommends that the subject be placed into an institutional setting, which can provide him with psychotropic medication and HIV treatment. The physician is concerned about the subject's persistent auditory hallucinations, even while medicated. Upon release, he is not confident that Nyanjong would be compliant with medication. Although he has not been hostile or aggressive in the recent past, the physician is concerned because the subject does not have the capacity to distinguish between right and wrong.

We have very few options in this particular alien's case. If we take LCDR Seligman's recommendation to release Nyanjong from the Colombia Care Center upon finding outside placement, the alien would become a ward of the State. Nyanjong's inability to distinguish between right and wrong could prove problematic if he gets into trouble. It is quite possible that ICE could be cast in an unfavorable light. Our other option is to continue to detain Nyanjong at the Colombia Care Center. We approached our District Counsel regarding the legality of indefinite detention, but he deferred and suggested that we approach headquarters for a definitive decision.