healthcare services to Duncan Nyanjong, because Dr. Seligman did not have authority to bind DIHS (or ICE) in contract, and moreover, no contract was entered into between DIHS and/or ICE and Lakeland Nursing Home.

REQUEST FOR ADMISSION NO. 3:

Please admit that Jay Seligman followed proper ICE and/or DIHS procedures in placing Duncan Nyanjong in Lakeland Nursing Home.

Response:

Admit.

REQUEST FOR ADMISSION NO. 4:

Please admit that ICE is required to follow certain procedures in releasing detainees.

Response:

Defendant objects to the phrase "certain procedures" as vague. Without waiving that objection, defendant admits that ICE has procedures in place that it must follow when it releases detainees from ICE custody.

REQUEST FOR ADMISSION NO. 5:

Please admit that ICE did not follow proper procedures in releasing Duncan Nyanjong from custody.

Response:

Denied. ICE followed proper procedure when it released Mr. Nyanjong from ICE custody.

REQUEST FOR ADMISSION NO. 6:

Please admit that ICE released Duncan Nyanjong from custody and/or dropped his



Blumberg No. 5208
EXHIBIT
J

detainer to contain costs.

Response:

Defendant admits that one reason ICE released Mr. Nyanjong from custody to contain costs, but denies that cost containment was the only reason for releasing Mr. Nyanjong from government custody.

REQUEST FOR ADMISSION NO. 7

Please admit that DIHS indicated that Duncan Nyanjong's placement in Lakeland Nursing home was permanent.

Response:

Denied. DIHS did not indicate that Mr. Nyanjong's placement at Lakeland Nursing home would be permanent.

REQUEST FOR ADMISSION NO. 8:

Please admit that Jay Seligman requested a continuance of care for Duncan Nyanjong around the time he was released from ICE custody in 2005.

Response:

In his deposition, Dr. Seligman stated that he recalled asking ICE to reconsider releasing Mr. Nyanjong from custody, but stated that he could not recall if this was a written or oral request. Defendant has no written documentation of this request and, therefore, can admit only to the extent that Dr. Seligman's deposition testimony supports this statement.

REQUEST FOR ADMISSION NO. 9:

Please admit that the manner in which ICE and/or DIHS paid Lakeland Nursing Home for the healthcare services it provided to Duncan Nyanjong was in accordance with proper

procedures.

Response:

Admit.

REQUEST FOR ADMISSION NO. 10:

Please admit that Duncan Nyanjong's placement in Lakeland Nursing Home was authorized by the appropriate ICE and/or DIHS officials.

Response:

Admit.

REQUEST FOR ADMISSION NO. 11:

Please admit that payment to Lakeland Nursing Home for the healthcare services it provided to Duncan Nyanjong was approved by the appropriate ICE and/or DIHS officials

Response:

Admit.

REQUEST FOR ADMISSION NO. 12:

Please admit that ICE and/or DIHS intended to enter into a contract with Lakeland Nursing Home for the provision of healthcare services to Duncan Nyanjong.

Response:

Defendant objects to Request for Admission 12 on the grounds that it is duplicative of Request for Admission 2. Without waiving that objection, the request is denied. DIHS and/or ICE did not intend to contract with Lakeland Nursing Home for the provision of healthcare services to Duncan Nyanjong, because Dr. Seligman did not have authority to bind DIHS (or ICE) in contract, and moreover, no contract was entered into between DIHS and/or ICE and

Lakeland Nursing Home.

REQUEST FOR ADMISSION NO. 13:

Please admit that no ICE or DIHS officials ever informed Lakeland Nursing Home that Jay Seligman did not have authority to bind ICE and/or DIHS in contract with Lakeland.

Response:

Denied.

REQUEST FOR ADMISSION NO. 14:

Please admit that the procedure utilized in placing Duncan Nyanjong in Lakeland Nursing Home was in accordance with ICE and/or DIHS's policies and procedures.

Response:

Defendant objects to Request for Admission 14 on the grounds that it is duplicative of Request for Admission 3. Without waiving that objection, defendant admits that the procedure utilized in placing Mr. Nyanjong in Lakeland Nursing home was in accordance with ICE and/or DIHS polices and procedures.

REQUEST FOR ADMISSION NO. 15:

Please admit that the procedure utilized by Jay Seligman in placing Duncan Nyanjong in Lakeland Nursing Home was the usual procedure utilized by Mental Health Care Coordinators for taking such action.

Response:

Defendant objects to Request for Admission 15 on the grounds that it is duplicative of Requests for Admission 3 and 13. Without waiving that objection, defendant admits that the procedure utilized by Dr. Seligman in placing Mr. Nyanjong in Lakeland Nursing Home was the

usual procedure utilized by Mental Health Care Coordinators for taking such action.

REQUEST FOR ADMISSION NO. 16:

Please admit that placing detainees in private healthcare when necessary was an integral part of Jay Seligman's job as Mental Health Coordinator.

Response:

Defendant admits that placing detainees in private healthcare when necessary was part of Dr. Seligman's job as Mental Health Coordinator, but denies that it was an "integral" part of Dr. Seligman's position.

REQUEST FOR ADMISSION NO. 17:

Please admit that, given Mr. Seligman's duties as Mental Health Coordinator, it was appropriate for Mr. Seligman to place Duncan Nyanjong in Lakeland Nursing Home.

Response:

Defendant objects to the term "appropriate" as vague and ambiguous. Without waiving that object, defendant admits that it was within the scope of Dr. Seligman's job description to place Mr. Nyanjong in Lakeland Nursing Home.

REQUEST FOR ADMISSION NO. 18:

Please admit that, given Mr. Seligman's duties as Mental Health Coordinator, it was appropriate for Mr. Seligman to guarantee Lakeland that DIHS would provide payment to Lakeland for the healthcare services it rendered to Duncan Nyanjong.

Response:

Defendant objects on the grounds that this request for admission calls for a legal conclusion. To the extent that it is considered to related to a factual matter, it is denied.

<u>REQUEST FOR ADMISSION NO. 19</u>:

Please admit that ICE and DIHS received a benefit by placing Duncan Nyanjong in Lakeland Nursing Home.

<u>Response:</u>

Admit.

<u>REQUEST FOR ADMISSION NO. 20</u>:

Please admit that the ICE and/or DIHS official whom you contend would have had authority to contract on behalf of ICE and/or DIHS with Lakeland was aware that Duncan Nyanjong had been placed in Lakeland Nursing Home.

<u>Response:</u>

Defendant admits that the ICE and/or DIHS officials with authority to contract on behalf of ICE and or DIHS to place Mr. Nyanjong in an nursing care facility were aware that he had been placed in Lakeland Nursing Home.

<u>REQUEST FOR ADMISSION NO. 21</u>:

Please admit that the ICE and/or DIHS official whom you contend would have had authority to contract on behalf of ICE and/or DIHS with Lakeland was aware that Lakeland was being compensated for the healthcare services it was providing to Duncan Nyanjong.

<u>Response:</u>

Defendant admits that the ICE and/or DIHS officials with authority to contract on behalf of ICE and/or DHIS to place Mr. Nyanjong in an nursing care facility was aware that Lakeland

was being compensated for the healthcare services it was providing to Mr. Nyanjong.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

STEVEN J. GILLINGHAM
Assistant Director

CARRIE DUNSMORE
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Classification Unit, 8th Floor
Washington, D.C. 20530
Tel: (202) 305-7576

December 3,2007

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on this 31 st day of December 2007, I caused to be mailed via email and Federal Express copies of "DEFENDANT'S RESPONSE TO PLAINTIFF'S REQUEST FOR ADMISSIONS" addressed as follows:

Michael Reese Davis
Hymel Davis & Petersen, L.L.C.
10602 Coursey Boulevard
Baton Rouge, Louisiana 70816
(225) 755-1060

Carrie Dinsmore
_______________________