IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LAKELAND PARTNERS, L.L.C.<br>d/b/a LAKELAND NURSING HOME,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 06-295C<br>(Judge Margaret M. Sweeney) |

**OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. Table of Contents


1. Table of Authorities. . . . . . iii

2. Statement of the Issues. . . . . . 1

3. Introduction. . . . . . 1

4. Law and Argument.. . . . . . 1

A. Summary Judgment Standard. . . . . . 1

B. The Government's Argument That It Is Not Obliged to Pay For Detainees Outside Custody. . . . . . 2

C. The Government Entered Into A Contract Obliging It To Pay For Mr. Nyanjong's Health Care Until Discharge From Lakeland; The Request for Medical Eligibility Is A Contract. . . . . . 8

D. Mr. Seligman Had Authority to Contract; Defendant Ratified The Contract. . . . . . 11

E. Defendant Waived The Anti-Deficiency Act Defense; Summary Judgment Is Improper On This Issue. . . . . . 13

F. Defendant's Reliance Upon F.A.R. 2.101 Is Unpersuasive; Defense Waived. . . . . . . . . . . 16

7. Conclusion. . . . . . . . . . . 17

8. Certificate of Service. . . . . . . . . . . 18

## II. Table of Authorities

**Cases**

*Brunner v. United States*, 70 Fed.Cl. 623, 640 (2006) . . . . . . . . . . . . . . . . . . . . . 11

*Dureiko v. United States*, 62 Fed.Cl. 340, 353 (2004). . . . . . . . . . . . . . . . . . . . . . 12

*Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985). . . . . . . . . . . . 6

*Kerr-McGee Corp. v. U.S.*, 77 Fed.Cl. 309 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Khairallah v. United States*, 43 Fed.Cl. 57 (1999). . . . . . . . . . . . . . . . . . . . . . . . . 13

*Leonardo v. United States*, 60 Fed.Cl. 126 (2004). . . . . . . . . . . . . . . . . . . . . . . . . 11

*Pacord, Inc. v. United States*, 139 F.3d 1320, 1322 (9th Cir. 1998). . . . . . . . . . . . 16

*Silverman v. United States*, 230 Ct.Cl. 701 (1982). . . . . . . . . . . . . . . . . . . . . . 14 - 15

*Son Broadcasting, Inc. v. United States*, 52 Fed.Cl. 815 (2002). . . . . . . . . . . . . . 11

*Zoubi v. United States*, 25 Cl.Ct. 581 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Statutes**

Fed. R. Evid. 901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

RCFC 56(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

8 C.F.R. 1003.19. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

RCFC 8(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13 - 14

RCFC 12.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

42 U.S.C. 280b-3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

31 U.S.C. 1341. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

42 U.S.C. 249. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

42 U.S.C. 250a. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## III. Introduction

Pursuant to Rule 56(b) of the Rules of the United States Court of Federal Claims, Lakeland respectfully requests that this Court deny defendant's motion for summary judgment in the above referenced matter. Lakeland incorporates the entirety of its Motion for Summary Judgment and Motion *In Limine*, the memorandum and exhibits in support thereof, Proposed Findings of Uncontroverted Facts, and the following law and argument.

## IV. Law and Argument

### A. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Kerr-McGee Corp. v. U.S.*, 77 Fed.Cl. 309, 314 (2007). A fact is material if it "might affect the outcome of the suit under the governing law. *Id.* An issue is genuine if it "may reasonably be resolved in favor of either party." *Id.*

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Id.* The moving party may discharge its burden by "pointing out ... that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving party then bears the burden of showing that there are genuine issues of material fact for trial. *Id.* The court must view the inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party. *Id.*

### B. The Government's Argument That It Is Not Obliged to Pay For Detainees Outside Custody

Defendant's motion asserts that the government is not obliged to pay for healthcare provided to detainees who have been released from custody.

#### 1. No Proof Nyanjong Was Released

However, defendant's motion fails to offer sufficient support for its allegation that Mr. Nyanjong was released from custody. In fact, as noted in Lakeland's Motion *In Limine*, there is insufficient evidence that Mr. Nyanjong was released from custody.

On November 16, 2006, Lakeland sent a Request for Production of Documents to defendant, which included requests for any documents concerning ICE's release of Mr. Nyanjong. Defendant responded that all such documents could be found at GOV 0214-218, 220. *See* Defendant's Responses to Request for Production, Exhibit O, No. 3.[1] Defendant also stated that it was not aware of any documents related to any proceedings or hearings related or pertaining to the order of release on recognizance of Mr. Nyanjong. *See Id.* at No. 4.

On April 10, 2007, counsel for Lakeland again requested that defendant search for and provide any documents related to Mr. Nyanjong's release. *See* 4/10/07 Correspondence, Exhibit P. On September 17, 2007, defendant responded by providing a letter from ICE. The letter stated that ICE has no

---

[1] Unless otherwise noted, all exhibits referenced herein refer to those exhibits filed in connection with Lakeland's Memo in Support of Motion for Summary Judgment and Motion *In Limine*.

further documents related to the release of Mr. Nyanjong in its possession. *See* 9/17/07 Correspondence, Exhibit Q.

In response to discovery requests, two documents were provided as proof that Mr. Nyanjong was released from United States' custody. *See* Order to Detain or Release Alien, Exhibit M; Order to Release on Recognizance, Exhibit R. Both documents constituting the order of release from United States' custody are legally ineffective because they are incomplete orders.

The first document, Order to Detain or Release Alien, purported to direct Lakeland to release Mr. Nyanjong because removal proceedings had been instituted against him. The form was signed by Christopher Jacobs, a Deportation Officer. However, the form also provided for the signature of the officer physically receiving or releasing Mr. Nyanjong. This portion of the form was left blank. The two signature blocks indicate that two officers needed to participate in releasing Mr. Nyanjong. However, only Mr. Jacobs, who authorized the release, signed the form.

Furthermore, the Order to Detain or Release Alien indicated that "removal proceedings" had occurred. Yet, defendant has not been able to produce any documents related to removal proceedings.

The second document is an Order to Release on Recognizance. The form stated that Mr. Nyanjong was being placed into removal proceedings and that he would be released from the custody of the government if he complied with the

conditions of release. One condition of release was that Mr. Nyanjong must report for any hearings for Immigration Review. *See* Order to Release on Recognizance, Exhibit R. Another condition was that Mr. Nyanjong was to report either in writing or in person (the method of reporting was incomplete) to Christopher Jacobs in New York on April 1, 2005. *Id.* A third condition marked on the form was that Mr. Nyanjong was to comply with conditions contained on an attached sheet, which was not attached to the form and thus unknown and incomplete. *Id.*

A portion of the form also required that Mr. Nyanjong acknowledge the conditions of release by being served with a copy and signing the form. *Id.* Christopher Jacobs signed and attested that he had served the order on Mr. Nyanjong but left the date blank. The form had a notice that "[f]ailure to comply with the conditions of this order may result in revocation of your release and your arrest and detention by the Immigration and Naturalization Service." *Id.*

Mr. Nyanjong was never served with a copy of these orders. Despite attesting that he served Mr. Nyanjong with the order, Mr. Jacobs actually faxed a copy of the orders to Lakeland's administrator. Mr. Jacobs did nothing to ensure that Mr. Nyanjong agreed to the conditions of release. It is undisputed that, at the time Mr. Nyanjong was in fact bed-ridden at Lakeland's facility, mentally incompetent, and unable to understand the conditions of release. *See* Exhibit D; Exhibit F, pp. 26 - 27; Exhibit I. He was unable to agree to appear in New York

on April 1, 2005, (and he obviously did not appear). Furthermore, ICE was aware that Mr. Nyanjong could not understand the proceedings against him and his release due to the fact that he was incompetent to stand trial in 2001 and that his mental condition had continued to decline.

Since both documents are incomplete, the order of release from United States' custody is legally ineffective.

Furthermore, defendant has stated that, in releasing aliens, ICE follows the same legal standard that Immigration Judges use at the Board of Immigration Appeals. *See* Answers to Interrogatories, Exhibit B, No. 7. Defendant asserted that the standard is whether the alien is a flight risk or a danger to the community and cites to 8 C.F.R. 1003.19. *Id.* Defendant further stated that, "while there are certain classifications of aliens that may not seek reclassification, see 8 CFR § 1003.19, if the alien can show by 'clear and convincing evidence' that he/she is not a flight risk or danger to the community, he/she will often be released pursuant to the procedures detailed in the statute and regulations." *Id.* However, it is clear that Mr. Nyanjong was not released pursuant to those statutes and regulations. In fact, 8 CFR § 1003.19(h)(3), relied upon by defendant, clearly states that the "alien . . . may apply" for a redetermination of custody conditions. The regulation also states that "an alien must first demonstrate, by clear and convincing evidence, that release would not pose a danger to other persons or to property. If an alien meets this burden, the alien must further demonstrate, by

clear and convincing evidence, that the alien is likely to appear for any scheduled proceedings or interview." Obviously, Mr. Nyanjong did not apply for a redetermination and was not able to demonstrate the showings required. Clearly, in this case Mr. Nyanjong was not properly discharged from ICE custody.

Defendant offered the affidavit of Mr. Jacobs in its Opposition to Plaintiff's Motion *In Limine* and will likely offer it or similar affidavits again with regard to the pending motions for summary judgment. However, the affidavit offers nothing more than legal conclusions or ultimate conclusory facts. "[U]nsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

Furthermore, defendant's proposed findings of uncontroverted facts note that the provider handbook provides that "coverage ends on the day that DHS/BTSD releases the detainee from custody **as indicated in DACS**." DACS is the ICE database that tracks the movements of detained and non-detained aliens within the immigration hearing and removal process. There is no evidence that the alleged release of Mr. Nyanjong was indicated in DACS. In fact, based upon available evidence or the lack thereof, it was not.

Accordingly, defendant's assertion that Mr. Nyanjong was discharged is insufficient to support its motion for summary judgment.

**2. Defendant Obligated Itself to Pay For Services**

Defendant also relies upon the "provider handbook" for the proposition that once Mr. Nyanjong was released, Lakeland's healthcare services for Nyanjong were no longer covered. However, it is undisputed that Lakeland was never provided with a copy of the "provider handbook." *See* Deposition of Hank Cooley, pp. 54, 61-62, attached hereto as Exhibit S. Mr. Cooley was also never informed about the information in the handbook. The handbook was never incorporated into the agreement between Lakeland and defendant. In fact, because Lakeland did not have internet service, it did not even have access to the handbook. *Id*.

Additionally, even if Mr. Nyanjong was properly released from custody, defendant obligated itself to pay for Mr. Nyanjong's healthcare while he was at Lakeland, notwithstanding the provider handbook. As noted in Lakeland's memo in support of its motion for partial summary judgment, Mr. Seligman negotiated the terms of Mr. Nyanjong's placement at Lakeland with Hank Cooley, Lakeland's administrator. Because of Mr. Nyanjong's condition, which had clearly prevented him from being released from ICE custody, Mr. Seligman never indicated to Mr. Cooley that Mr. Nyanjong's placement would be temporary. *See* Deposition of Hank Cooley, Exhibit G, p. 75.

In fact, Mr. Seligman believed that Mr. Nyanjong would be at Lakeland until he passed away or was mentally competent to stand trial, or until an

alternative payor source was located. *See* Deposition of Seligman, Exhibit F, pp. 25 - 26. Mr. Cooley was never informed that there was a chance Mr. Nyanjong would be released from ICE custody or that his funding could be cut off. *See* Deposition of Mr. Cooley, Exhibit G, p. 80.

In fact, Lakeland would not have accepted Mr. Nyanjong if it had known those things were possible. *See* Deposition of Cooley, Exhibit G, p. 81. Based upon Mr. Seligman's representations, Mr. Cooley believed Mr. Nyanjong's placement in Lakeland to be permanent, i.e., until an alternative payor source was located or until Mr. Nyanjong died. *Id.* at p. 75. Mr. Seligman believed the same. Accordingly, regardless of the contents of the provider handbook, defendant obligated itself to provided payment to Lakeland for as long as it provided healthcare to Mr. Nyanjong.

### C. The Government Entered Into A Contract Obliging It To Pay For Mr. Nyanjong's Health Care Until Discharge From Lakeland; The Request for Medical Eligibility Is A Contract

Contrary to defendant's assertion, Lakeland can show, and has shown, that defendant entered into a contract to pay for Mr. Nyanjong's health care after his release from custody.

As more fully set forth in Lakeland's motion for partial summary judgment, Mr. Cooley and Mr. Seligman negotiated the terms of Mr. Nyanjong's care at Lakeland before the Request for Medical Eligibility was signed by Mr.

Seligman.[2] *See* Deposition of Mr. Cooley, Exhibit S attached hereto, pp. 41 & 43. Mr. Seligman and Mr. Cooley's meeting of the minds is evidenced in the Request for Medical Eligibility. Mr. Seligman indicated that Mr. Nyanjong's placement was "permanent", which was in accordance with Mr. Seligman's and Mr. Cooley's agreement. Mr. Seligman also testified that he filled out the TAR in which he specified that payment was to be made to Lakeland until Nyanjong was discharged from Lakeland. *See* TAR, Exhibit I. In fact, the TAR states "pay rate **until discharged**." *See* TAR, Exhibit I.

Clearly there was an offer to contract by defendant; Lakeland accepted the offer; specific and unambiguous terms were discussed and agreed upon; there was a meeting of the minds; and defendant received consideration.

Defendant's reliance upon the fact that the Request for Medical Eligibility is not entitled "contract" or "agreement" is unfounded. Many contracts are not entitled "contract" or "agreement." Additionally, Lakeland has maintained that there was an oral agreement between defendant and Lakeland. Lakeland's claim has merit even if the Request for Medical Eligibility did not exist.

---

[2] Defendant's assertion that neither party signed the Request for Medical Eligibility is wrong. Mr. Seligman's signature is on the document. He signed as a DIHS official and the Request for Medical Eligibility states that DIHS is the "responsible party." Mr. Seligman testified that he marked through the "responsible party" language simply to indicate that he was not *personally* liable for payment. *See* Seligman Deposition, p. 59, attached hereto as Exhibit T. Defendant's argument would lead to the conclusion that an agency or corporation could never enter into a contract based on the signature of its officials or officers.

Notably, Federal Acquisition Regulation 2.101 shows the weakness of defendant's argument and supports the finding that a contract existed. F.A.R. 2.101 provides, in pertinent part:

> Contract means a mutually binding legal relationship obligating the seller to furnish the supplies or services . . . and the buyer to pay for them. . . . [C]ontracts include (but are not limited to) awards and notices of awards; **job orders** or task letters issued under basic ordering agreements; letter contracts; **orders**, such as purchase orders, under which the contract becomes effective by **written acceptance or performance**; and bilateral contract modifications. . . .

The Request for Medical Eligibility determination would fit into several of these categories.

Furthermore, defendant mistakenly relies upon Mr. Cooley's testimony that at times Lakeland would not accept a patient after receiving the Request for Medical Eligibility. In this case, it is undisputed that Mr. Cooley and Mr. Seligman negotiated the terms of Mr. Nyanjong's placement and agreed upon terms before the Request for Medical Eligibility was signed by Mr. Seligman. In this case, the Request for Medical Eligibility represented the contract between the parties and also evidenced the oral agreement. In fact, Mr. Cooley stated that he considered it to be a contract in this case. *See* Defendant's A65.

Defendant's reliance upon Mr. Cooley testimony that a patient usually was provided an admission packet is also unpersuasive. Mr. Cooley testified that an admissions packet is not required to admit a patient and that sometimes such a packet is not filled out. *See* Deposition of Hank Cooley, p. 76, attached hereto as

Exhibit S. Considering the fact that defendant has no admissions packet from Lakeland, that was obviously the case in the instant matter. It certainly can not be disputed that Mr. Nyanjong was admitted to Lakeland.

Accordingly, defendant's arguments that the government did not enter into a contract obliging it to pay for Mr. Nyanjong's care once he was released is without merit.

### D. Mr. Seligman Had Authority to Contract; Defendant Ratified The Contract

In order to establish the existence of a contract, a plaintiff must show that the government employee who entered the agreement had actual authority to contract. *Leonardo v. United States*, 60 Fed.Cl. 126, 130 (2004). Actual authority may be express or implied. *Son Broadcasting, Inc. v. United States*, 52 Fed.Cl. 815, 820 (2002); *Brunner v. United States*, 70 Fed.Cl. 623, 640 (2006) ("The authority to contract with the government is not limited to express authority, but may also be implied.").

An inquiry into the precise nature of the government employee's duties is appropriate to determine whether implied authority exists. *Leonardo*, 60 Fed.Cl. at 130. The Supreme Court has expressed its test as whether the power to be implied is the "usual and appropriate mode" or "the appropriate means" of performing a duty, or of doing what an officer "has a right to do." *Brunner*, 70 Fed.Cl. at 641 (citing *Bradley v. United States*, 98 U.S. 104, 114 (1878)). Courts have also held that authority to bind the government is generally implied when

such authority is considered to be an integral part of the duties assigned to a government employee. *Brunner*, at 641.

For example, the Federal Circuit has suggested that implicit authority could be based on "responsibility for [a] subcontractor's administration" and "the authority to draw checks on [a] joint bank account" established for the subcontract. *Brunner*, at 641 (citing *H. Landau & Co. v. U.S.*, 886 F.2d 322, 324 (1982)). The Court of Federal Claims has found the implied authority to contract based on the duties of scheduling, hiring, and paying invoices, that were central to an officer's work. *Id.* "Thus, it has long been established that an agent may have an implied authority to contract on behalf of the government, based on a consideration of the duties of that agent, and whether the power to contract was appropriate or essential to their performance." *Id.* Simply stated, actual authority to contract may be implied by the related duties and powers of a government agent. *Id.* at 643; *see, e.g., Zoubi v. United States*, 25 Cl.Ct. 581, 588 (1992) (holding that official not designated as a contracting officer had authority to contract where doing so was necessary to fulfill the officer's duties).

The government may also ratify a contract entered into without authority from a contracting officer. To make the requisite showing to support ratification, the plaintiff must show that a superior official had authority to ratify, knowledge of a subordinate's unauthorized act, and then must confirm, adopt, or acquiesce to the unauthorized action. *Dureiko v. United States*, 62 Fed.Cl. 340, 353

(2004); *see also Brunner*, 70 Fed.Cl. at 646. Actual or constructive knowledge is sufficient. *Id*. Stated another way, ratification requires knowing acquiescence to an unauthorized agreement by a superior who has contracting authority. *Khairallah v. United States*, 43 Fed.Cl. 57, 64 (1999).

Based on the foregoing and the reasons more fully set forth in Lakeland's memorandum in support of its motion for summary judgment, it is clear that Mr. Seligman had the authority and responsibility for placing Mr. Nyanjong in Lakeland. Obviously, integral to that authority and responsibility was the power to negotiate the terms of care and payment and the authority to guarantee that payment would be made by defendant. It is also clear that defendant entered into a contract with Lakeland even if Mr. Seligman did not have authority to contract on behalf of defendant because defendant ratified the contract.

Accordingly, defendant has not overcome its burden of showing that it is entitled to summary judgment holding that Mr. Seligman did not have authority to contract and that there was not a contract.

### E. Defendant Waived The Anti-Deficiency Act Defense; Summary Judgment Is Improper On This Issue

For the first time in this litigation, defendant raises the Anti-Deficiency Act as a defense. Defendant has never before raised this issue, including pleading it as an affirmative defense. No discovery has been conducted relevant to this defense. No notice of such a defense has ever been provided to Lakeland.

RCFC 8(c) provides:

> In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.

RCFC 12 also provides that "[e]very defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required . . . ." Clearly, prejudice to Lakeland has resulted due to defendant's failure to plead this defense.

Furthermore, this Court's October 25, 2006, May 8, 2007 Orders required the parties to file joint status reports addressing any dispositive motions the parties intended to file. As stated, defendant has never made any reference to the Anti-Deficiency Act or a defense based thereon.

Accordingly, defendant has waived its defense based upon the Anti-Deficiency Act.

Furthermore, because no discovery has been conducted related to this defense, it is unclear which appropriations or agency budgets funded Mr. Nyanjong's healthcare.[3] There were several agencies involved. Accordingly, defendant cannot meet its burden on this issue and summary judgment is inappropriate.

---

[3] Some statutes related to the Public Health Service provide for multi-year appropriations. For example, 42 U.S.C. § 280b-3 provides for appropriations "as may be necessary" for each fiscal year 2001 through 2005.

Furthermore, the Anti-Deficiency Act, 31 U.S.C. 1341 provides that an officer or employee of the United States Government may not:

> (A) make or authorize an expenditure or obligation **exceeding an amount available** in an appropriation or fund for the expenditure or obligation;
> (B) involve either government in a contract or obligation for the payment of money before an appropriation is made **unless authorized by law.**

In this case, there is no evidence that defendant's contract with Lakeland exceeded an amount available in an appropriation. Additionally, many appropriations authorize expenditure of funds until such funds are extinguished, even if such expenditures occur beyond the fiscal year for which the appropriation was made. There is no evidence in this case that such an appropriation was not made in this case. Again, due to the lack of discovery on this issue, such can not be determined.

Furthermore, other statutes authorize payment for medical care and treatment of detainees. For example, 42 U.S.C. § 249 provides that detainees may be treated and cared for by the Public Health Service and provides that such care may be given at the expense of the Immigration and Naturalization Service when authorized by an officer in charge. 42 U.S.C. § 250a provides that the Attorney General may transfer to the Health and Human Resources and Services Administration "such amounts **as may be necessary** for direct expenditures by that Administration for medical relief for inmates of Federal penal and

correctional institutions."[4] Accordingly, payment for the Lakeland contract was "authorized by law."

Lastly, in this case, as noted in Lakeland's memorandum in support of its motion for summary judgment, it is clear the defendant ratified the contract as late as March or April of 2005, by continuing to pay for Mr. Nyanjong's healthcare. Accordingly, at a minimum the Anti-Deficiency Act would only bar recovery for expenses incurred by Lakeland in 2006.

### F. Defendant's Reliance Upon F.A.R. 2.101 Is Unpersuasive; Defense Waived

Again for the first time in this litigation, defendant raises the F.A.R. 2.101 as a defense to the contract with Lakeland. Defendant alleges that such contracts must be in writing pursuant to Federal Acquisition Regulation 2.101. Defendant has never before raised this issue, including pleading it as an affirmative defense.

Pursuant to RCFC 8(c), RCFC 12, *supra*, and this Court's scheduling orders, defendant should have previously raised these issues as defenses. By not doing so, defendant has waived this defense.

Moreover, defendant's reliance upon F.A.R. 2.101 is unpersuasive. "Implied-in-fact contracts with the government have been enforced despite statutory or regulatory requirements that contracts be in writing." *Pacord, Inc. v. United States*, 139 F.3d 1320, 1322 (9th Cir. 1998).

[4] The HRSA entered into the inter-agency agreement with ICE pursuant to which Nyanjong's care was provided.

## VII. Conclusion

Based on the foregoing and the reasons more fully set forth in Lakeland's memorandum in support of its motion for summary judgment and motion *in limine*, Lakeland asserts that, at a minimum, genuine issues of material fact prevent this Court from granting defendant's motion for summary judgment.

Respectfully submitted,

HYMEL DAVIS & PETERSEN, L.L.C.

s/Michael Reese Davis
Michael Reese Davis (Bar Roll No. 17529)
10602 Coursey Boulevard
Baton Rouge, Louisiana 70816
Telephone: (225) 298-8118
Facsimile: (225) 298-8119
mdavis@hymeldavis.com

**Counsel for Plaintiff Lakeland Nursing Home**

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2008, a copy of the foregoing Plaintiff's Opposition to Defendant's Motion for Summary Judgment was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will also be sent to Carrie Dunsmore by operation of the court's electronic filing system.

s/Michael Reese Davis
Michael Reese Davis (Bar Roll No. 17529)
Hymel Davis & Petersen, LLC
10602 Coursey Boulevard
Baton Rouge, Louisiana 70816
Telephone: (225) 298-8118
Facsimile: (225) 298-8119
mdavis@hymeldavis.com