IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LAKELAND PARTNERS, L.L.C.<br>d/b/a LAKELAND NURSING HOME,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 06-295C<br>(Judge Margaret M. Sweeney) |

**REPLY TO DEFENDANT'S OPPOSITION TO LAKELAND'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

NOW INTO COURT, through undersigned counsel comes Lakeland Partners, L.L.C. d/b/a/ Lakeland Nursing Home ("Lakeland"), who hereby responds to defendant's opposition to Lakeland's Motion for Summary Judgment.

Lakeland incorporates the arguments made in its memorandum in support of its motion for partial summary judgment and motion *in limine*, Lakeland's opposition to defendant's motion for summary judgment, and Lakeland's reply memorandum to defendant's opposition to Lakeland's motion *in limine*. This reply only addresses defendant's arguments to the extent not already addressed in the foregoing pleadings.

**A. Request for Medical Eligibility and FAR 2.101**

The government has asserted throughout the pleadings related to the motions for summary judgment that the Request for Medical Eligibility does not

represent a contract and that FAR 2.101 requires procurement contracts to be in writing. For the following reasons and those previously argued, these arguments are unpersuasive.

The Request for Medical Eligibility is a contract. F.A.R. 2.101 provides, in pertinent part:

> Contract means a mutually binding legal relationship obligating the seller to furnish the supplies or services . . . and the buyer to pay for them. . . . [C]ontracts include (but are not limited to) awards and notices of awards; **job orders** or task letters issued under basic ordering agreements; letter contracts; **orders**, such as purchase orders, under which the contract becomes effective by **written acceptance or performance**; and bilateral contract modifications. . . .

The Request for Medical Eligibility determination would fit into several of these categories.

Moreover, implied-in-fact contracts with the government have been enforced despite statutory or regulatory requirements that contracts be in writing. *PacOrd, Inc. v. United States*, 139 F.3d 1320, 1322 (9th Cir. 1998).

In *PacOrd*, the government argued that there was no exception to FAR 2.101. The court disagreed. *Id.* at 1322. The court noted that implied-in-fact contracts with the government have been enforced despite statutory or regulatory requirements that contracts be in writing. *Id.* The court, citing *Narva Harris Constr. Corp. v. United States*, 216 Ct.Cl. 238, 574 F.2d 508 (1978) further observed:

> since [section 200] became effective in 1954, this court ha often allowed recovery on an implied-in-fact contract. . . . The failure, for whatever reason, of an attempt at an express contract be it written or oral, is not enough, in itself, to deprive a party of a recovery for breach where sufficient additional facts exist for the court to infer the "meeting of the minds" necessary to separate an implied-in-fact from a pure implied-in-fact contract.

*Id.* The court noted that the government made assurances to *PacOrd* to secure the desired performance, but that the parties did not execute written contracts. *Id.* at 1323. PacOrd proceeded to perform its services. *Id.* Thus, the court held PacOrd would be permitted to establish at trial the existence of an implied-in-fact contract. *Id.*

In this case, Lakeland has established that an offer was made to Lakeland to accept Nyanjong as a patient and the offer was accepted. The Request for Medical Eligibility and TAR reflect this. Defendant admitted that the appropriate officials approved Nyanjong's admission to Lakeland. Both the government and Lakeland intended for Mr. Nyanjong to remain at Lakeland until Mr. Nyanjong died. *See* Deposition of Seligman, Exhibit F[1], pp. 25 - 26; TAR.[2] The government continually paid for Mr. Nyanjong's care until April 1, 2005. That payment was

---

[1] All exhibits are those previously provided in conjunction with Lakeland's Motion for Partial Summary Judgment.

[2] The government's Response to Plaintiff's Proposed Findings of Uncontroverted Facts and Counter Statement of Fact stated that Commander Seligman "also believed there was a possibility that Mr. Nyanjong would be released from custody if other health care options were found for him, such as Medicaid or another social service provider." *See* Defendant's Response to Plaintiff's Proposed Findings of Uncontroverted Facts, No. 18. However, this does not help defendant. Medicaid or other social service providers were never found for Mr. Nyanjong.

approved by the appropriate officials. Lastly, the United States clearly received consideration for the contract and defendant has admitted this fact. *See* Defendant Answers to Requests for Admissions, Exhibit J, No. 19.

It is important to note, as indicated in prior pleadings, that Mr. Seligman indicated in the TAR for Lakeland to be paid until Mr. Nyanjong was discharged. It is undisputed that the TAR was appropriately approved. It is also undisputed that "discharged" meant discharged from Lakeland. Mr. Seligman testified that he used "discharged" as a medical term. *See* Deposition of Seligman, p. 66, attached hereto as Exhibit U. There can be no doubt about the parties' intent in this case; and Mr. Nyanjong was never discharged.

Accordingly, Lakeland is entitled to summary judgment holding that a contract existed between Lakeland and the government which obligated the government to pay for Mr. Nyanjong's healthcare until he died.

**B. Implied Authority**

In its opposition, the government argues that Commander Seligman could not have had implied authority. In support of its arguments, the government relies upon the holdings in *California Sand & Gravel, Inc. v. United States*, 22 Cl.Ct. 19 (1990) and *Sam Gray Enterprises, Inc. v. United States*, 43 Fed.Cl. 596 (1999). The government also implies that the *Brunner* case cited by Lakeland only relied upon one 1989 case and a contracts textbook for its holding that implied authority may be implied when the power to be implied is the "usual and

appropriate mode" or "the appropriate means" of performing a duty, or of doing what an officer "has a right to do."

However, *Brunner* cited to a number of other supporting cases. *See Brunner v. United States*, 70 Fed.Cl. 623, 641 (Fed.Cl. 2006) (citing *Advanced Team Concepts, Inc. v. United States,* 68 Fed.Cl. 147, 150 - 151 (2005) (finding implied authority to contract based on the duties of "scheduling, hiring, and paying invoices," that were central to an officer's work); *Hull & Argalls v. County of Marshall,* 12 Iowa 142, 159-60 (1861) (finding that the duty to provide a court house "involves the power to enter into all necessary and lawful contracts")).

Other cases have agreed. *See Stevens Van Lines, Inc. v. United States*, 80 Fed.Cl. 276, 280 (2008) (holding that government agent had implied actual authority to enter into contract where that authority was considered to be an integral part of the duties assigned; and that implied authority derives from the Government's actions and intent); *Zoubi v. United States*, 25 Cl.Ct. 581, 588 (1992) (holding that official not designated as a contracting officer had authority to contract where doing so was necessary to fulfill the officer's duties). These cases are but a few which support Lakeland's position.

*Brunner,* one of the more recent pronouncements by the Court of Federal Claims on this issue, thus clearly held that an agent may have implied authority to contract on behalf of the government, based on a consideration of the duties of that agent, and whether the power to contract was appropriate or essential to

their performance. As the court in *California Sand & Gravel, Inc. v. United States,* 22 Cl.Ct. 19, 27 (1990) held, implied authority to contract can be based upon “at the least, some limited, related authority.”

Moreover, the government’s assertion that the doctrine of implied authority applies only when some contracting authority was actually delegated is unpersuasive. For the reasons fully set forth on pages 10 - 13 of Lakeland’s memorandum in support of its motion for summary judgment, clearly authority to place Mr. Nyanjong in Lakeland and to guarantee payment for services was delegated to Commander Seligman. Moreover, based upon Commander Seligman’s duties as set forth at pages 10 - 13 of the aforementioned memorandum, guaranteeing payment for services was integral, in fact crucial, to Commander Seligman’s job. At a minimum, enough authority had been delegated to Mr. Seligman to provide implied authority.

**C. The Contract Was Ratified**

Defendant also asserts that Commander Seligman’s actions were not ratified because Lakeland had not identified a specific individual who allegedly ratified the agreement. Defendant also contends that the ratifying officials must have actual or constructive knowledge of the unauthorized acts. Defendant’s own admissions have negated defendant’s argument. Defendant has admitted the following:

1. Mr. Seligman’s superiors whom defendant contends had contracting authority were aware of Mr. Nyanjong’s placement in

Lakeland and were aware that Lakeland was providing healthcare services to Mr. Nyanjong on behalf of DIHS/ICE. *See* Defendant's Answers to Request for Admissions, Exhibit J, No. 20; Defendant's Response to Lakeland's Proposed Uncontroverted Fact No. 61.

2. The official whom defendant contends had contracting authority was aware that Lakeland was being compensated for the healthcare services it was providing to Nyanjong. *See* Defendant's Answers to Request for Admissions, Exhibit J, No. 21; Defendant's Response to Lakeland's Proposed Uncontroverted Fact No. 62.

3. Mr. Seligman followed proper and usual procedures in placing Mr. Nyanjong in Lakeland and such placement was approved by the appropriate ICE and DIHS officials. *See* Defendant's Answers to Requests for Admissions, Exhibit J; Defendant's Response to Lakeland's Proposed Uncontroverted Fact No. 30.

4. The manner in which ICE and DIHS paid Lakeland for its services was in accordance with ICE and DIHS procedures. *See* Defendant's Answers to Requests for Admissions, Exhibit J, No. 9; Defendant's Response to Lakeland's Proposed Uncontroverted Fact No. 34.

5. Payment to Lakeland was approved by the appropriate ICE and DIHS officials. *See* Defendant's Answers to Request For Admissions, Exhibit J, No. 11; Defendant's Response to Lakeland's Proposed Uncontroverted Fact No. 35.

6. Mr. Nyanjong's placement in Lakeland was approved by the appropriate ICE and/or DIHS officials. *See* Defendant's Answers to Request for Admissions, Exhibit J, No. 10; Defendant's Response to Lakeland's Proposed Uncontroverted Fact No. 63.[3]

[3] The other portions of defendant's argument on this issue have previously been addressed in Lakeland's opposition to defendant's motion for summary judgment.

## D. Conclusion

Based on the foregoing and the reasons more fully set forth in Lakeland's prior pleadings[4], Lakeland requests that summary judgment be granted in its favor, holding that the government was obligated to pay Lakeland for the services provided for Mr. Nyanjong until he died.

Respectfully submitted,

HYMEL DAVIS & PETERSEN, L.L.C.

s/Michael Reese Davis
Michael Reese Davis (Bar Roll No. 17529)
10602 Coursey Boulevard
Baton Rouge, Louisiana 70816
Telephone: (225) 298-8118
Facsimile: (225) 298-8119
mdavis@hymeldavis.com

**Counsel for Plaintiff Lakeland Nursing Home**

[4] Those pleadings include Lakeland's Memorandum in Support of Motion for Partial Summary Judgment and Motion *In Limine*, Opposition to Defendant's Motion for Summary Judgment, Reply to Defendant's Opposition to Lakeland's Motion *In Limine*, and accompanying documents.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2008, a copy of the foregoing Reply to Defendant's Opposition to Motion for Partial Summary Judgment was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will also be sent to Carrie Dunsmore by operation of the court's electronic filing system.

s/Michael Reese Davis
Michael Reese Davis (Bar Roll No. 17529)
Hymel Davis & Petersen, LLC
10602 Coursey Boulevard
Baton Rouge, Louisiana 70816
Telephone: (225) 298-8118
Facsimile: (225) 298-8119
mdavis@hymeldavis.com