IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LAKELAND PARTNERS, L.L.C.,<br>d/b/a LAKELAND NURSING HOME,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 06-295C<br>(Judge Sweeney) |

DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

STEVEN J. GILLINGHAM
Assistant Director

CARRIE A. DUNSMORE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES……………………………...………………..…………iii

ARGUMENT…………………………...……………………………………………1

I. Mr. Nyanjong Was Properly Released From Government Custody …………..…1

II. There Was No Contract Entered Into Between The Government And Lakeland To Pay For Mr. Nyanjong's Health Care Once He Was Released From Custody…………………………………………………………………..7

A. The Request For Medical Eligibility Is Not A Contract…………………..9

B. Commander Seligman Did Not Have Implied Authority To Bind The Government In Contract …………………………………………...11

C. Commander Seligman's Actions Were Not Ratified By His Supervisors……………………………………………………………….14

III. The Government Has Not Waived Its Anti-Deficiency Act And FAR 2.101 Arguments.…………………………………………………………………..…15

CONCLUSION……………………………………………………………………….17

## TABLE OF AUTHORITIES

### CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)……………………………………………………………2, 3

Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,
731 F.2d 831 (Fed. Cir. 1984)…………………………………………………..3

Big Yank Corp. v. Liberty Mut. Fire Ins.,
125 F.3d 308 (6th Cir.1997)…………………………………………………..10

Browning v. Peyton,
918 F.2d 1516 (11th Cir.1990)………………………………………………..10

Bull v. United States,
68 Fed. Cl. 212 (2005)………………………………………………………...16

Caldera v. Northrop Worldwide Aircraft Services, Inc.,
192 F.3d 962 (Fed. Cir. 1999)………………………………………………….. 16

California Sand & Gravel, Inc. v. United States,
22 Cl. Ct. 19, 27 (1990)……………………………………………… 11, 12, 14

Celotex Corp. v. Catrett,
477 U.S. 317 (1986)…………………………………………………………….2

Cessna Aircraft Co. v. Dalton,
126 F.3d 1442 (Fed. Cir. 1997)………………………………………………..13

City of El Centro v. United States,
922 F.2d 816 (Fed. Cir. 1990)…………………………………………………..8

Delmarva Power & Light Co. v. United States,
79 Fed. Cl. 205 (2007)………………………………………………………….3

Federal Crop Ins. Corp. v. Merrill,
332 U.S. 380 (1947)……………………………………………………………8

Ferring B.V. v. Barr Labs.,
437 F.3d 1181 (Fed. Cir. 2006)…………………………………………………3

Garza v. United States,
34 Fed. Cl. 1 (1995)…………………………………………………………….8

George Hyman Constr. Co. v. United States,
30 Fed. Cl. 170 (1993)……………………………………………………………2

Girling Health Sys., Inc. v. United States,
949 F.2d 1145 (Fed. Cir. 1991).…………………………………………………...8

Harbert/Lummus Agrifuels Projects v. United States,
142 F.3d 1429 (Fed. Cir. 1998)………………………………………………..14

Harper/Nielsen-Dillingham, Builders, Inc. v. United States,
81 Fed. Cl. 667 (2008)……………………………………………………………3

Hercules, Inc. v. United States,
516 U.S. 417 (1996)……………………………………………………………...13

Hopkins v. Arkansas,
2007 WL 2996842 (E.D.Ark.2007)………………………………………………3

Jarvis v. United States,
45 Fed. Cl. 19 (1999)……………………………………………………………13

Long Island Sav. Bank v. United States,
503 F.3d 1234 (Fed. Cir. 2007)……………………………………………………3

Modern Sys. Technology Corp. v. United States,
24 Cl. Ct. 360 (1991)……………………………………………………………...9

O'Neill v. Corporate Trustees, Inc.,
376 F.2d 818 (5th Cir.1967)……………………………………………………..10

Riley & Ephriam Constr. Co., Inc. v. United States,
408 F.3d 1369 (Fed. Cir. 2005)……………………………………………………2

Sam Gray Enterprises, Inc. v. United States,
43 Fed. Cl. 596 (1999)…………………………………………………………11, 12

Shaw v. United States,
8 Cl. Ct. 796, 799 (1985)…………………………………………………………9

Stout Road Associates, Inc. v. United States,
80 Fed. Cl. 754 (2008)…………………………………………………………...12

Trauma Serv. Group Ltd. v. United States,
104 F.3d 1321 (Fed. Cir. 1997)………………………………………………..10

United States v. Beebe,
180 U.S. 343 (1901)……………………………………………………………….14

**STATUTES AND REGULATIONS**

FAR 2.101……………………………………………………………………………15,16

FAR 1.602-31……………………………………………………………………….14, 15

8 C.F.R. § 1003.19…………………………………………………………………5, 6

8 C.F.R. § 1236.1(c)(6)(i)…………………………………………………………..6

42 U.S.C. § 249……………………………………………………………………….13

31 U.S.C. § 1341…………………………………………………………………..13, 18

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LAKELAND PARTNERS, L.L.C.,<br>d/b/a LAKELAND NURSING HOME,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 06-295C<br>(Judge Sweeney) |

DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 7.2 of the Rules of the Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits this reply in support of its motion for summary judgment. In our motion for summary judgment, we established that plaintiff, Lakeland Partners L.L.C. ("Lakeland"), could not succeed on the merits of its case because a contract could not exist that would oblige the Government to pay for Duncan Nyanjong's health care once he was released from Government custody. Lakeland responds that such a contract would be proper, and that a material question of fact exists as to whether Mr. Nyanjong was properly released from Government custody. In fact, no material questions of fact exist; accordingly defendant respectfully requests that this Court grant us summary judgment.

ARGUMENT

I. Mr. Nyanjong Was Properly Released From Government Custody

In our motion for summary judgment, we demonstrated that the Government could not be obliged to pay for Duncan Nyanjong's health care costs after he was

released from Government custody. Def. Br. at 5-7.[1] In its response, Lakeland argues that Mr. Nyanjong was not properly released. Pl. Resp. at 2-6.[2] It argues that the documents produced to support Mr. Nyanjong's release are legally ineffective, and that the agency did not properly follow its own regulations in releasing Mr. Nyanjong. Id. Neither argument is supportable. In fact, as we demonstrated in our response to Lakeland's partial motion for summary judgment, there can be no genuine dispute of fact that Mr. Nyanjong was properly released from Government custody on April 1, 2005.

According to Rule 56(c) of the Rules of the United States Court of Federal Claims ("RCFC"), summary judgment is appropriate "if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). In order to prevail on a summary judgment motion, the moving party bears the initial burden of demonstrating the absence of evidence to support an essential element of the non-movant's claim. Riley & Ephriam Constr. Co., Inc. v. United States, 408 F.3d 1369, 1371 (Fed. Cir. 2005) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986)); George Hyman Constr. Co. v. United States, 30 Fed. Cl. 170, 173 (1993).

Once the moving party has satisfied its initial burden, the burden shifts to the opposing party to establish a genuine issue of material fact, "that is, evidence such that a

---

[1] "Def. Br." refers to a numbered page of Defendant's Motion For Summary Judgment, filed March 18, 2007.

[2] "Pl. Br." refers to a numbered page of Plaintiff's Opposition to Defendant's Motion For Summary Judgment, filed May 19, 2008.

reasonable [trier of fact] could return a verdict for the nonmoving party" with regard to that element of the claim. Anderson, 477 U.S. at 248 (quoted in Long Island Sav. Bank v. United States, 503 F.3d 1234, 1243-44 (Fed. Cir. 2007). In meeting its burden, the non-movant "cannot rest on mere allegations, but must present actual evidence." Long Island Sav., 503 F.3d at 1244; accord RCFC 56(e) ("[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.") (emphasis added); see also Anderson, 477 U.S. at 248-49.

Thus, the initial burden is on the Government as the moving party in this case, but if that burden is met, the plaintiff must present sufficient specific factual evidence to survive summary judgment. Harper/Nielsen-Dillingham, Builders, Inc. v. United States, 81 Fed. Cl. 667 (2008). In other words, when the moving party has met its initial burden under Rule 56, the nonmoving party must "meet proof with proof," Hopkins v. Arkansas, 2007 WL 2996842, *2 (E.D.Ark.2007), and mere "[a]ttorney argument asserting a genuine issue of material fact is insufficient to oppose successfully a motion for summary judgment." Delmarva Power & Light Co. v. United States, 79 Fed. Cl. 205, 217 (2007) (citing Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd., 731 F.2d 831, 836 (Fed. Cir. 1984)); Ferring B.V. v. Barr Labs., 437 F.3d 1181, 1193 (Fed. Cir. 2006) ("Conclusory allegations and attorney arguments are insufficient to overcome a motion for summary judgment.").

The Government has produced two documents demonstrating that Mr. Nyanjong was released from Government custody: 1) the "Order To Detain Or Release Alien," signed by Chris Jacobs of ICE on April 1, 2005, and faxed to Lakeland on that same date, A43-45, [3] and 2) the "Order to Release on Recognizance," signed by Michael Philips of ICE for William Cleary, Field Office Director, dated February 23, 2005, A46. Lakeland argues that neither document is legally effective because portions of the documents have been left blank, and because Mr. Nyanjong was not able to comply with the terms of the document. Pl. Br. at 3-5.

Chris Jacobs of ICE has submitted an affidavit explaining that he has personal knowledge that Mr. Nyanjong was released from Government custody on April 1, 2005, and that both documents are legally effective. See May 4, 2008 Affidavit of Chris Jacobs at A70-71.[4] In his affidavit, Mr. Jacobs explains that the Order to Detain or Release Alien form was complete with only his signature, and that it was not necessary for two officers to sign the form. A71 at ¶ 5. He also explains that the Order to Release on Recognizance is accurate and complete as filed. A72 at ¶ 7. Mr. Jacobs explains that the fact that Mr. Nyanjong did not demonstrate that he was likely to appear for any scheduled proceeding or interview did not void his release. A71 at ¶ 4. Finally, Mr. Jacobs states that he has personal knowledge that removal proceedings occurred in Mr. Nyanjong's case. A71 at ¶ 6.

---

[3] "A_" refers to a numbered page to the previously filed Appendix to Defendant's Motion For Summary Judgment.

[4] This document was previously provided to the Court as an attachment to Defendant's May 4, 2008 Opposition to Plaintiff's Motion In Limine, and was again provided in Defendant's Supplemental Appendix, attached to its Response to Plaintiff's Partial Motion For Summary Judgment.

Lakeland argues that Mr. Jacobs's affidavit is "nothing more than legal conclusions or ultimate conclusory facts." Lakeland is mistaken – Mr. Jacobs' affidavit not only states his personal knowledge that Mr. Nyanjong was released from custody on April 5, 2006, but provides affirmation that the release forms were complete as filed. See A71-72. Furthermore, Lakeland's characterization of Mr. Jacob's affidavit is insufficient to raise a genuine issue of material fact where it has not shown any fact disputing Mr. Jacobs' affidavit. In particular, Lakeland offers no evidence to contradict Mr. Jacobs's affidavit. Its conclusory allegations and attorney arguments are insufficient to contradict Mr. Jacobs's affidavit, and, accordingly, the Court should find that Mr. Nyanjong was properly released from custody on April 5, 2006.

Lakeland has not disputed the facts explained by Mr. Jacobs concerning the facts of Mr. Nyanjong's release or the applicable agency procedures. Thus, there is no factual dispute precluding the entry of summary judgment in our favor. Instead, Lakeland argues that the release was "not proper" pursuant to 8 C.F.R. § 1003.19. At the outset we note that there is no basis for requiring that the Government to pay Lakeland regardless of whether any internal guidelines were followed or not – especially when no contract with Lakeland supplies the allegedly unsatisfied conditions of release. The fact is that Mr. Nyanjong was released. Regardless, Lakeland's characterization of the release is incorrect.

Plaintiff argues that Mr. Nyanjong was not properly released from Government custody because he did not show by clear and convincing evidence that he was likely to appear for any scheduled proceeding or interview that he was required to attend. Pl. Br. at 5. Section 1003.19(h)(3) of title 8 of the Code of Federal Regulations provides:

> Except as otherwise provided in paragraph (h)(1) of this section, an alien subject to section 303(b)(3)(A) of Div. C of Pub.L. 104-208 may apply to the Immigration Court, in a manner consistent with paragraphs (c)(1) through (c)(3) of this section, for a redetermination of custody conditions set by the Service. Such an alien must first demonstrate, by clear and convincing evidence, that release would not pose a danger to other persons or to property. If an alien meets this burden, the alien must further demonstrate, by clear and convincing evidence, that the alien is likely to appear for any scheduled proceeding or interview.

However, Lakeland ignores the fact that the regulations also provide for other procedures for the release of "unremovable aliens and certain long-term detainees." Specifically, section § 1236.1(c)(6)(i) also provides that:

> [i]f the district director determines that an alien subject to section 303(b)(3)(A)(ii) or (iii) of Div. C of Pub.L. 104-208 cannot be removed from the United States because the designated country of removal or deportation will not accept the alien's return, the district director may, in the exercise of discretion, consider release of the alien from custody upon such terms and conditions as the district director may prescribe, without regard to paragraphs (c)(2), (c)(4), and (c)(5) of this section.

8 C.F.R. § 1236.1(c)(6)(i). In sum, although section 1003.19 provides an avenue for an alien to obtain release (by convincing an Immigration Judge that he should be released from custody, and can meet applicable burdens, such as appearing at certain proceedings), section 1236.1 provides an avenue for ICE, at the discretion of its director, to release any alien from custody under any terms that the director may prescribe.

Lakeland also argues, citing the Immigration Health Care Provider Handbook, that coverage of detainee health care "ends on the day that DHS/BTSD releases the detainee from custody as indicated in DACS.[5]" Pl. Br. at 6. Plaintiff states that we have not provided evidence from DACS that Mr. Nyanjong was released from custody, and

---

[5] DACS is the Deportable Alien Control System, a computer program that ICE uses to track the cases of aliens in removal proceedings. See Declaration of John Tsoukaris, previously provided as an attachment to Defendant's Response to Plaintiff's Second Motion To Compel Production.

although it does not explicitly state as much, presumably intends this argument to show that coverage of Mr. Nyanjong's health care never actually ended, even if he was released from custody. This argument is insupportable and elevates form over substance. Internal tracking forms aside, we have demonstrated that Mr. Nyanjong was actually released from custody on April 5, 2006, and Lakeland had ample opportunity to secure any proof to the contrary. Moreover, Lakeland cannot dispute that it was on actual notice that Mr. Nyanjong was released on April 5, 2006, inasmuch as Lakeland recieved a fax from the Government on that day, stating that Mr. Nyanjong was to be released. See A43-44.[6]

In sum, because there is no material question of fact that Mr. Nyanjong was released from Government custody and no legal impediment to his release, Lakeland's attempt to defeat the Government's motion for summary judgment fails.

## II. There Was No Contract Entered Into Between The Government And Lakeland To Pay For Mr. Nyanjong's Care Once He was Released From Custody

Lakeland argues that the Government obliged itself to provide payment for Mr. Nyanjong's health care as long as Lakeland provided health care to Mr. Nyanjong. In support of this argument, Lakeland states that it was not provided a copy of the health care provider handbook, that Commander Jay Seligman, National Mental Health Care Coordinator, entered into negotiations to provide health care to Mr. Nyanjong with Lakeland, and that Lakeland was never informed that Mr. Nyanjong's health care might be temporary. Pl. Br. at 7-8. However, as we have explained and discuss further below, there can be no contract for several reasons. First, even if there were discussions about

[6] Similarly plaintiff's arguments, Pl. Br. at 3, that defendant has not provided evidence that removal proceedings actually occurred, or that Mr. Nyanjong received the removal documents are equally unavailing when we have demonstrated that he was actually released.

Mr. Nyanjong's care, the document Lakeland asserts is the contract contains none of the terms upon which it relies for payment. In short there was no intent to contract and no meeting of the minds concerning terms. Second, Lakeland the alleged contracting officer, Commander Jay Seligman, did not have authority to bind the Government in contract. Third, to the extent that Lakeland is asserting an implied in fact contract, such a fails for the same reason an express contract fails. Fourth, no such contract could require the Government to pay indefinitely, in violation of the Anti-Deficiency Act, 31 U.S.C. § 1341.

To establish the existence of a contract, whether express or implied-in-fact, plaintiff must show:

> (1) that there was an unambiguous offer to contract, upon specific terms;
>
> (2) that there was an unambiguous acceptance of that offer;
>
> (3) that both parties intended to enter into a contract, often called a mutuality of intent; and
>
> (4) that the United States received consideration.

Garza v. United States, 34 Fed. Cl. 1, 14 (1995) (emphasis in original). See, e.g., City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990), cert. denied, 111 S. Ct. 2851 (1991); Girling Health Sys., Inc. v. United States, 949 F.2d 1145, 1146-47 (Fed. Cir. 1991), cert. denied, 112 S. Ct. 1482 (1992). Further, "when the United States is a party, an additional requirement is added: the Government official, whose words or conduct are relied upon, must have actual authority to bind the Government in contract." Garza, 34 Fed. Cl. at 14 (citing Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947)); El Centro, 922 F.2d at 820).

To satisfy this burden, Lakeland must prove "facts that show or suggest in some manner an agreement between the parties, a meeting of the minds and a mutual consent to be bound." Shaw v. United States, 8 Cl. Ct. 796, 799 (1985) (emphasis added). The parties must possess contractual intent and their agreement must be sufficiently definite to be enforced. Modern Sys. Technology Corp. v. United States, 24 Cl. Ct. 360 (1991) (in the absence of contractual intent or sufficiently definite terms, no contractual obligations arise).

A. The Request For Medical Eligibility Is Not A Contract

In our motion for summary judgment, we demonstrated that the document Lakeland relies upon in its complaint, the Request For Medical Eligibility, is not a contract because the document does not show an unambiguous offer to contract upon specific terms, nor does it show the requisite meeting of the minds between the parties. Def. Br. at 8-10. In its opposition to our motion for summary judgment, Lakeland essentially concedes that the Request For Medical Eligibility does not contain specific contractual terms, relying instead upon: (1) the Treatment Authorization Form ("TAR"), an internal Department of Immigration Health Services ("DIHS") form that Commander Seligman was required to complete in order place Mr. Nyanjong at Lakeland; and (2) deposition testimony from Lakeland employee Hank Cooley suggesting that he and Commander Seligman discussed the terms of Mr. Nyanjong's stay. Pl. Br. at 8-9. None of this evidence shows that the Request For Medical Eligibility is a contract, nor has Lakeland pointed to any other document which would constitute a written contract between the parties.

The Request For Medical Eligibility is not a contract because it does not demonstrate the specific contractual terms necessary for an unambiguous offer to contract. Lakeland baldly states that "specific and unambiguous terms were discussed and agreed upon" Pl. Br. at 9, but provides no concrete examples of such terms being present in the Request For Medical Eligibility. For example, the Request For Medical Eligibility contains no specific terms of Mr. Nyanjong's care, such as price, what care was to be included, what procedures would apply if either party wished to remove Mr. Nyanjong from Lakeland Nursing Home, or what remedy would be appropriate in the event of breach. Moreover, no one at Lakeland ever signed the document, indicating that this was an actual offer to the United States.

Consequently, Lakeland cannot demonstrate the requisite meeting of the minds between the parties, when there are no clear contractual terms present in the Request For Medical Eligibility. There can be no contract where the meeting of the minds, if any, is so indiscernible and tenuous. See, e.g., Trauma Serv. Group Ltd. v. United States, 104 F.3d 1321, 1326 (Fed. Cir. 1997) (holding material term in agreement must be explicitly agreed to); see also Browning v. Peyton, 918 F.2d 1516, 1521 (11th Cir.1990)(citing O'Neill v. Corporate Trustees, Inc., 376 F.2d 818, 820 (5th Cir.1967)) ("there must be a meeting of the minds on all essential terms and obligations of the contract"); and Big Yank Corp. v. Liberty Mut. Fire Ins., 125 F.3d 308, 315 (6th Cir.1997) ("an enforceable contract is not created unless the offer is accepted and there is actually a meeting of the minds as to the provisions of the alleged agreement").

Nor can Lakeland argue, in the alternative, that the TAR constitutes a written contract between itself and the United States. The TAR, which has been provided at

A31, is an internal DIHS document that Commander Seligman was required to complete in order place Mr. Nyanjong at Lakeland. Lakeland is not a party to this document, see A31, and thus cannot demonstrate the requisite offer and acceptance necessary to demonstrate a contract. Moreover, as Lakeland concedes, Pl. Br. at 9, the TAR states that the Government will "pay rate until discharged," indicating that the Government did not intend and that Commander Seligman's authority, if any, did not extend to pay "permanently" for Mr. Nyanjong's care.[7]

B. Commander Seligman Did Not Have Implied Authority To Bind The Government In Contract

In our motion for summary judgment, we demonstrated that Commander Seligman did not have actual authority to enter into contract. It its response, Lakeland asserts that Commander Seligman had "implied authority" to bind the Government in contract, Pl. Br. at 9-13, relying on the rule that "authority to bind the Government is sometimes implied when such authority is considered to be an integral part of the duties assigned to a Government employee." Sam Gray Enterprises, Inc. v. United States, 43 Fed. Cl. 596, 603 n.10 (1999). Lakeland argues that because placing Mr. Nyanjong at Lakeland was an integral part of Commander Seligman's duties as Mental Health Coordinator, he had implied authority to contract with Lakeland. Pl. Br. at 9-13. However, that "doctrine applies only when some contracting authority was actually delegated." Id. (quoting California Sand & Gravel, Inc. v. United States, 22 Cl. Ct. 19, 27 (1990), aff'd, 937 F.2d 624 (Fed. Cir. 1991) and holding that that "a person with no

[7] Because Commander Seligman had to complete this form before placing Mr. Nyanjong at Lakeland, the TAR also indicates limits upon his authority – even assuming he had the authority to enter into contractual arrangements.

actual authority may not gain actual authority through the court-made rule of implied actual authority").

Here we have shown, directly, that Commander Seligman has no authority to contract. see Def. Br. at 12. Thus any implication of such authority to the contrary is in error. As this Court explained in California Sand & Gravel, 22 Cl. Ct. at 27, "a person with no actual authority may not gain actual authority through the court-made rule of implied actual authority." Discussing a case upon which Lakeland relies, the Court stated: "[t]he court believes that Landau and the theory of implied actual authority is of limited application, and was not intended to repeal the long established rule that, when dealing with the government, only government agents with actual authority can make a contract, express or implied." Id.; see also Sam Gray Enterprises, Inc., 43 Fed. Cl. at 603 n.10 (implied actual authority "doctrine applies only when some contracting authority was actually delegated"); Stout Road Associates, Inc. v. United States, 80 Fed. Cl. 754, 758 (2008) (same).

Moreover, even if plaintiff could demonstrate that Commander Seligman had contracting authority, there can be no question that he did not have authority, implied or actual, to bind the Government to pay once Mr. Nyanjong was released from Government custody or to bind the Government to "permanently" pay for Mr. Nyanjong's health care. This is supported by the TAR, A31, which clearly states that the payment status is approved only "until discharge" of Mr. Nyanjong. Furthermore, as we demonstrated in our motion for summary judgment, and discuss in more detail below, no one has authority to bind the Government to "permanently" pay for a detainee's health care because such a promise would violate the Anti-Deficiency Act, 31 U.S.C. § 1341.

Plaintiff alleges in its complaint that the Government breached its contract to "permanently" pay for Mr. Nyanjong's health care. Pl. Compl. at ¶ 26.

As demonstrated in our motion for summary judgment, however, the Anti-Deficiency Act, 31 U.S.C. § 1341, bars the Government from entering into a contract for future payment of money in advance of, or in excess of, an existing appropriation, and therefore restricts the ability of the Government to enter into multi-year contracts because funds generally cannot be obligated beyond the current fiscal year. Cessna Aircraft Co. v. Dalton, 126 F.3d 1442, 1449 (Fed. Cir. 1997). Consequently, no contract can have existed obliging the Government "permanently pay" for Mr. Nyanjong's health care in the absence of specific authorization for such a "permanent" undertaking. Hercules, Inc. v. United States, 516 U.S. 417, 427 (1996); Jarvis v. United States, 45 Fed. Cl. 19, 20 (1999) (holding that "[o]pen-ended liabilities would violate the Anti-Deficiency Act . . . and [are ] unauthorized as a matter of law."). Because plaintiff shows no authorization for such a permanent contract, the "contract" cannot be enforced.[8]

Lakeland argues that there was no violation of the Anti-Deficiency Act because "there is no evidence that defendant's contract with Lakeland exceeded an amount available in an appropriation," Pl. Br. at 15, and attempts to argue that 42 U.S.C. § 249 provides that detainees may be paid for without an express contract. Pl. Br. at 16. Plaintiff misunderstands the Government's argument. The Government does not argue that the Anti-Deficiency Act would bar any payment for Mr. Nyanjong's health care, only that it would bar the Government from promising to "permanently pay" for Mr.

[8] Plaintiff also argues that the Government has somehow waived this argument by not raising it as an affirmative defense. As discussed in more detail in section III below, violation of the Anti-Deficieny Act is not an affirmative defense that requires advanced pleading under RCFC 8.

Nyanjong's care because such a promise is an open ended liability that would violate the Act. Accordingly, a contract cannot exist obliging the Government to pay for Mr. Nyanjong's care after he was released from Government custody.

C. Commander Seligman's Actions Were Not Ratified By His Supervisors

Lakeland next argues that the agreement was a binding contract because it was ratified by "Mr. Seligman's superiors." Pl. Br. at 15. However, as we explain further, below, Lakeland does not identify a specific individual who allegedly ratified the agreement, and in any event no Government official could have ratified an agreement to provide health care to Mr. Nyanjong once he was released from custody, or to "permanently" provide health care to Mr. Nyanjong.

"Agreements made by government agents without authority to bind the government may be subsequently ratified by those with authority" but only "if the ratifying officials have actual or constructive knowledge of the unauthorized acts." Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1433 (Fed. (quoting United States v. Beebe, 180 U.S. 343, 354 (1901)). "Moreover, ratification must be based on a demonstrated acceptance of the contract. Silence in and of itself is not sufficient to establish a demonstrated acceptance of the contract by the [ratifying official]." Id. at 1434 (citations omitted).

"For effective ratification, a superior must have authority to ratify." California Sand & Gravel, Inc. v. United States, 22 Cl. Ct. 19, 27 (1990). Thus, the Federal Acquisition Regulation authorizes ratification of Government contracts "only" if "[t]he resulting contract would otherwise have been proper if made by an appropriate contracting officer." FAR 1.602-3(c)(3) (emphasis added). The FAR provides that "that

ratification must be done by "the head of the contracting activity," FAR 1.602-3(b)(2) and that "in no case shall the authority be delegated below the level of chief of the contracting office." Id.

In this case, plaintiff has not alleged, and cannot allege that any of these conditions have been met. Lakeland does not identify any particular person who has ratified the contract, let alone "the head of the contracting activity" or "the chief of the contracting office." FAR 1.602-3(b)(2)-(3). Nor can Lakeland show that a contract in violation of the Anti-Deficiency Act "would otherwise have been proper," if made by an appropriate contracting officer. As demonstrated above, any contract that obliged the Government to "permanently" pay for Mr. Nyanjong's care or to pay for his care after he was released from custody would be void. The agency cannot ratify an improper contract, and thus, Lakeland cannot demonstrate that this contract was ratified by Commander Seligman's superiors.

## III. The Government Has Not Waived Its Anti-Deficiency Act and FAR 2.101 Arguments

Finally, Lakeland attempts to bar the Government from defending itself by arguing that we have waived our Anti-Deficiency Act and FAR 2.101 arguments by not pleading them as affirmative defenses or describing them in our status reports. Pl. Br. at 14-16. Such arguments are insupportable.

First, neither of these arguments is an affirmative defense that must be pled under RCFC 8(c). Rule 8(c) requires that "a party set forth affirmatively" certain specific defenses (for example statute of limitations or fraud), and "any other matters constituting an avoidance or affirmative defense." The rules do not define these terms. However, this Court has observed that affirmative defenses encompass "two types of pleadings: ones

that admit the allegations of the complaint but suggest some other reason why there is no right to recovery, and ones that concern allegations outside of the plaintiff's prima facie case that defendant therefore cannot raise by a simple denial in the answer." Bull v. United States, 68 Fed. Cl. 212, 272, n. 66 (2005). Here neither category applies. Both our Anti-Deficiency Act and FAR 2.101 arguments clearly relate to whether plaintiff can prove elements of its claims – namely whether it could show a contract had been entered into, and whether it could show that any contract was entered into by an official with proper authority.[9] Tellingly, Lakeland points to no case law to support its propositions that we have waived the right to make these arguments. Thus, the burden remains on plaintiff to prove these elements and we did not waive these defenses by not asserting them in our answer.

Second, waiver will not apply unless the alleged failure to plead results in unfair surprise or prejudice. See e.g., Caldera v. Northrop Worldwide Aircraft Services, Inc., 192 F.3d 962, 92 (Fed. Cir. 1999). Here, Lakeland has known from the beginning that we contended that Commander Seligman lacked authority to agree to the contract and deposed him on that point. Had Lakeland required additional discovery, it could have asserted as much pursuant to RCFC 56(f). However, we can imagine no additional discovery required to address our arguments. Indeed the nature of both these arguments is legal in nature, and because they were presented in the form of a written motion months ago, Lakeland can hardly claim surprise or prejudice.

---

[9] Moreover, both issues – the existence of the contract and authority to enter into the contract could, arguably be considered jurisdictional, such that it could be properly raised at any stage of this case. See e.g., RCFC 12(h)(1), or for failure to state a claim upon which relief could be granted such that it could be raised any time before trial, see e.g. RCFC 12(h)(2).

Lakeland's argument that these arguments should have been raised in response to this Court's status Orders is equally unavailing. Lakeland provides no support for the proposition that failure to raise these arguments in status reports constitutes a valid waiver. Moreover, in our status reports we indicated that "Defendant's Statement Of The Issues" included "Whether there was an express or implied-in-fact contract between Lakeland Partners, L.L.C. ("Lakeland") and the Government to provide medical services to detainee Duncan Nyanjong," "whether Jay Seligman possessed authority to bind the Government to its contract with Lakeland," "whether the terms of any contract bound the Government to continue to pay for medical services provided by Lakeland to detainee Nyanjong after his release from custody until his death," and "whether the Division of Immigration Health Services is authorized to pay for medical services for an alien who is released and no longer within the custody of the United States Immigration and Customs Enforcement ("ICE")." See December 2, 2007 Joint Status Report. We argued our Anti-Deficiency Act and FAR 2.101 points within the context of these broader issues, and plaintiff clearly was on notice that such issues would be before this Court in our dispositive motions. To argue that we have waived the specifics of our arguments because plaintiff could not anticipate them is insupportable, and should be rejected.

## CONCLUSION

For the above reasons, we respectfully request that the Court grant defendant's motion for summary judgment.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

/s/Carrie A. Dunsmore
CARRIE A. DUNSMORE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tel: (202) 305-7576
Fax: (202) 514-8624

June 5, 2008

Attorneys for Defendant

Certificate of Filing

I hereby certify that on this 5th day of June, 2008, a copy of “Defendant’s Reply Brief in Support of its Motion for Summary Judgment” was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court’s electronic filing system. Parties may access this filing through the Court’s system.

/s/Carrie A. Dunsmore
CARRIE A. DUNSMORE