# In the United States Court of Federal Claims

No. 06-295 C
(Filed: July 2, 2009)

```
*************************************
LAKELAND PARTNERS, L.L.C.          *
d/b/a LAKELAND NURSING HOME,       *
                                   *
            Plaintiff,             *   Motion for Protective Order; RCFC 26(c);
                                   *   Good Faith Conferment; Good Cause;
v.                                 *   Requests for Admission; RCFC 36;
                                   *   Interrogatories; RCFC 33; Leave to Serve
THE UNITED STATES,                 *   Additional Interrogatories
                                   *
            Defendant.             *
*************************************
```

Michael Reese Davis, Baton Rouge, LA, for plaintiff.

Elizabeth Anne Speck, United States Department of Justice, Washington, DC, for defendant.

**RULING DENYING THE UNITED STATES' MOTION FOR A PROTECTIVE ORDER AND GRANTING IN PART AND DENYING IN PART THE UNITED STATES' MOTION TO QUASH PLAINTIFF'S THIRD SET OF REQUESTS FOR ADMISSION AND THIRD SET OF INTERROGATORIES**

**SWEENEY**, Judge

     Before the court is the United States' Motion for a Protective Order and Motion to Quash Plaintiff's Third Set of Requests for Admissions and Third Set of Interrogatories ("motions"). In its motions, the government asserts that plaintiff Lakeland Partners, L.L.C. ("Lakeland") propounded discovery requests that exceeded the scope of discovery permitted by the court in its December 30, 2008 order and that it is therefore entitled to a protective order pursuant to Rule 26(c) of the Rules of the United States Court of Federal Claims ("RCFC"). Lakeland contends that its discovery is consistent with the court's order and argues that the government's affirmative defense, the Anti-Deficiency Act ("ADA"), 31 U.S.C. § 1341 (2006), has evolved and this further development necessitates the discovery it now seeks. For the reasons discussed below, the government's motion for a protective order is denied and its motion to quash Lakeland's third set of requests for admission and third set of interrogatories is granted in part and denied in part.

## I. BACKGROUND

### A. Factual Allegations

Lakeland is a Louisiana limited liability company that owns and operates a nursing home facility in Pineville, Louisiana. Compl. ¶ 1. On April 14, 2006, Lakeland instituted this action in the United States Court of Federal Claims ("Court of Federal Claims") pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601-613 (2006), and alleged that the government, by and through the United States Department of Homeland Security ("DHS") Immigration and Customs Enforcement ("ICE") and Division of Immigration Health Services ("DIHS"), entered into an agreement with Lakeland to pay for medical and other costs associated with the healthcare of Duncan Nyanjong, a detainee who suffered from human immunodeficiency virus, dementia, seizure disorder, and respiratory failure. Compl. ¶¶ 3-9. According to Lakeland, Commander Jay Seligman negotiated the terms of Mr. Nyanjong's placement at Lakeland's nursing home facility on behalf of DIHS. Id. ¶ 5. Lakeland alleges that the contract into which it entered with ICE and DIHS set a monthly rate of $2,964.00, plus pharmacy costs, and required that DIHS approve any additional costs outside regularly provided services. Id. ¶ 6. It also alleges that the contract "unequivocally stated that [Mr.] Nyanjong's care was 'permanent,' without exception or qualification." Id. ¶ 26; see also Compl. Ex. A (containing a Request for Medical Eligibility Determination form whereupon "permanently" was circled by hand in response to whether the patient requested nursing home placement). In May 2004, Lakeland received Mr. Nyanjong as a patient. Compl. ¶ 10. On January 15, 2005, Mr. Nyanjong was transferred to the intensive care unit of Huey P. Long Hospital, where he remained until his return to Lakeland's nursing home facility on February 4, 2005. Id. ¶¶ 11-13.

Lakeland claims that Mr. Nyanjong was "too weak to ambulate or take [c]are of himself" when he was removed from Huey P. Long Hospital and returned to its nursing home facility, id. ¶ 13, and was mentally incapable of understanding simple commands, id. ¶ 14. It alleges that DIHS prompted ICE to reconsider Mr. Nyanjong's status as a detainee after he was admitted to Huey P. Long Hospital. Id. ¶ 16. In February 2005, ICE notified Lakeland that Mr. Nyanjong "was going to be discharged effective March 1, 2005, because [he] was no longer a threat to society." Id. ¶ 17. Thereafter, Lakeland sought a thirty-day extension to the March 1, 2005 deadline in order to locate another facility that would continue Mr. Nyanjong's care. See id. ¶ 18. On April 1, 2005, ICE transmitted to Lakeland an Order to Retain or Release Alien. Id. ¶ 19; Compl. Ex. B. Lakeland claims that it was unable to convey a notice of discharge due to Mr. Nyanjong's mental condition and that it was unable to secure another facility that would contribute to his care. Compl. ¶¶ 21, 23; see also id. ¶ 22 (alleging that Louisiana Medicaid precluded coverage to noncitizens and that social security disability was required in order for Mr. Nyanjong to qualify for Medicaid). According to Lakeland, ICE and DIHS ceased reimbursing it for expenses related to Mr. Nyanjong's care as of March 2005, id. ¶ 24, thereby causing it to incur approximately $49,500.00 in costs, id. ¶ 37, from that time until Mr. Nyanjong's death on March 6, 2006, id. ¶ 34.

## B. Procedural History

In October 2006, the court permitted the parties to engage in limited fact discovery "pertaining solely to issues that would be relevant for Defendant's contemplated Motion to Dismiss . . . ." Order, Oct. 25, 2006; see also Joint Prelim. Status Report 1 (indicating the government's position that the Court of Federal Claims lacked jurisdiction over the complaint). Thereafter, the court permitted the parties to engage in full fact discovery through November 30, 2007.[1] See Order, May 5, 2007. Discovery disputes prompted Lakeland to file a motion to compel and, while briefing proceeded on its motion to compel, a supplemental motion to compel. The court denied Lakeland's motion to compel and instructed the parties to fully brief Lakeland's supplemental motion to compel.[2] See Order, Jan. 16, 2008. The court then denied Lakeland's supplemental motion to compel on February 14, 2008.

This case was transferred to the undersigned on February 29, 2008. On March 17, 2008, the government filed a motion for summary judgment, and Lakeland filed motions for partial summary judgment and in limine. In its response brief to the government's motion for summary judgment, Lakeland asserted that the government raised the ADA as an affirmative defense for the first time:

> For the first time in this litigation, defendant raises the [ADA] as a defense. Defendant has never before raised this issue, including pleading it as an affirmative defense. No discovery has been conducted relevant to this defense. No notice of such a defense has ever been provided to Lakeland.
>
> . . . .

---

[1] The discovery period was later extended through December 31, 2007. See Order, Dec. 4, 2007.

[2] In its motion to compel, Lakeland indicated that it propounded discovery requests upon the government on November 19, 2007, eleven days prior to the close of fact discovery set by the court in its May 5, 2007 order. Pl.'s Mot. Compel 1. The government, Lakeland asserted, refused to respond to these requests because the response deadline fell outside the discovery period. Id. Lakeland then sought and obtained an extension of the discovery deadline. See supra note 1. Despite the extension of the discovery deadline, the government did not respond, contending that Lakeland needed to reserve its discovery requests. Pl.'s Mot. Compel 2. Lakeland argued in its motion to compel, among other things, that the government's failure to respond to its requests for admission within thirty days deemed them admitted by operation of law. Id. at 3. After the court determined that the majority of issues raised by Lakeland's motion to compel were moot, it addressed whether the requests for admission were deemed admitted pursuant to RCFC 36(a). See Order at 2, Jan. 16, 2008. The court ruled that the requests were not deemed admitted, stating that "the interests of justice weigh in favor of deciding cases upon the merits . . . ." Id.

3

> . . . Clearly, prejudice to Lakeland has resulted due to defendant's failure to plead this defense.
>
> Furthermore, . . . defendant has never made any reference to the [ADA] or a defense based thereon.
>
> Accordingly, defendant has waived its defense based upon the [ADA].
>
> Furthermore, because no discovery has been conducted related to this defense, it is unclear which appropriations or agency budgets funded Mr. Nyanjong's healthcare. There were several agencies involved. . . .
>
> In this case, there is no evidence that defendant's contract with Lakeland exceeded an amount available in an appropriation. Additionally, many appropriations authorize expenditure of funds until such funds are extinguished, even if such expenditures occur before the fiscal year for which the appropriation was made. There is no evidence in this case that such an appropriation was not made in this case. Again, due to the lack of discovery on this issue, such can not be determined.

Pl.'s Opp'n Def.'s Mot. Summ. J. 13-15 (footnote omitted). The government, however, maintained that its ADA defense was neither waived nor a surprise. Specifically, it argued that

> Lakeland has known from the beginning that we contended that Commander Seligman lacked authority to agree to the contract and deposed him on that point. Had Lakeland required additional discovery, it could have asserted as much pursuant to RCFC 56(f). However, we can imagine no additional discovery required to address our arguments. Indeed the nature of both these arguments is legal in nature, and because they were present in the form of a written motion months ago, Lakeland can hardly claim surprise or prejudice.
>
> . . . .
>
> . . . To argue that we have waived the specifics of our arguments because plaintiff could not anticipate them is insupportable, and should be rejected.

Def.'s Reply Supp. Mot. Summ. J. 16-17.

The court ordered Lakeland to explain (1) why it should not construe Lakeland's failure to seek discovery as a waiver or a forfeit of its right to conduct discovery, and (2) whether it intended to seek discovery pursuant to RCFC 56(f). See Order, Sept. 5, 2008. In its motion for discovery, Lakeland stated: "[D]efendant defended Lakeland's claim on the basis that [Commander] Seligman allegedly did not have authority to bind the government . . . because he

was not a 'contracting officer.' At no time prior to the filing of defendant's motion for summary judgment . . . did defendant . . . hint at a defense based upon the ADA." Reply Ct.'s Sept. 5, 2008 Order & Mot. Disc. Pursuant RCFC 56(f) ("Pl.'s Mot. Disc.") 2; cf. Reply Def.'s Opp'n Lakeland's Rule 56(f) Mot. Disc. ("Reply Supp. Pl.'s Mot. Disc.") 4-5 (contending that Lakeland's prima facie case was to establish that (1) Commander Seligman had either express or implied authority to contract, (2) there was an unambiguous offer to contract, (3) both parties intended to enter into a contractual relationship, and (4) the government received consideration, and that it was not required to prove that the contract violated the ADA). Lakeland argued that "[t]he ADA goes to the legality of the contract itself, not Commander Seligman's authority to enter into it." Reply Supp. Pl.'s Mot. Disc. 5. Although Lakeland acknowledged that it initially believed that additional discovery was unnecessary because it "did not believe that defendant had met its burden on the ADA issue," Pl.'s Mot. Disc. 3, and, consequently, the burden "never shifted to Lakeland to rebut defendant's argument," Reply Supp. Pl.'s Mot. Disc. 1 n.1, it nevertheless requested discovery, Pl.'s Mot. Disc. 4. Lakeland represented that any discovery "will be limited to the ADA issue [and] can be obtained within a reasonable amount of time." Id.

Over the government's objection, the court granted Lakeland's motion. See generally Order, Dec. 30, 2008. The court observed that it "cannot conclude that Lakeland has been dilatory in conducting discovery regarding facts about the appropriations or funding for the underlying contract," id. at 3-4, and reopened discovery "in order to allow Lakeland to engage in fact-finding related to defendant's assertion that the contract violates the [ADA]." Id. at 4. Accordingly, it permitted Lakeland to "pursue discovery in all forms allowed by the RCFC, e.g., requests for production of documents, interrogatories, and depositions." Id.

Discovery resumed on December 30, 2008, and the court granted two requests for extensions of the discovery deadline. Following the court's December 30, 2008 order, Lakeland propounded upon the government interrogatories, requests for production, and requests for admission. See Pl.'s Opp'n Def.'s Mot. Protective Order & Mot. Quash ("Pl.'s Opp'n") 1. It also deposed two DIHS officials. Id. The government provided supplemental and second supplemental responses to Lakeland's discovery "[a]fter Lakeland expressed its dissatisfaction with several of the [initial] responses . . . ." Id. According to Lakeland, the government's supplemental responses "revealed that funds were appropriated for the medical care of ICE detainees through the time Duncan Nyanjong died," thereby suggesting to Lakeland that reimbursement "for expenses incurred in the care and treatment of Mr. Nyanjong would not have exceeded an amount available in an appropriation or fund." Id. at 1-2. Lakeland believed that this new discovery substantiated its position that the contract at issue did not violate the ADA. Id. at 2. It determined, based upon its interpretation of the government's responses, that the government's ADA defense was "now contingent upon its allegation that Mr. Nyanjong was released, and released properly, from ICE custody." Id. at 3. To that end, and based upon its belief that the government "relies upon the release issue in support of its ADA defense," id. at 4, Lakeland propounded discovery related to "whether Mr. Nynjong was properly released from custody," United States' Mot. Protective Order & Mot. Quash Pl.'s Third Set Requests

5

Admissions & Third Set Interrogatories ("Def.'s Mots.") 2.  The government then filed the instant motions, which are fully briefed and ripe for adjudication.

## II.  LEGAL STANDARDS

It is "axiomatic that a trial court has broad discretion to fashion discovery orders[.]" White Mountain Apache Tribe of Ariz. v. United States, 4 Cl. Ct. 575, 583 (1984); see also Florsheim Shoe Co., Div. of Interco, Inc. v. United States, 744 F.2d 787, 797 (Fed. Cir. 1984) ("Questions of the scope and conduct of discovery are, of course, committed to the discretion of the trial court."); Shell Petroleum, Inc. v. United States, 46 Fed. Cl. 583, 585 (2000) ("Trial courts enjoy broad discretion in controlling discovery.").  Although discovery rules "are to be accorded a broad and liberal treatment," Hickman v. Taylor, 329 U.S. 495, 507 (1947); see also Afro-Lecon, Inc. v. United States, 820 F.2d 1198, 1203 (Fed. Cir. 1987) ("The scope of civil discovery is broad and requires nearly total mutual disclosure of each party's evidence prior to trial."), the court must, "[i]n deciding either to compel or quash discovery, . . . balance potentially conflicting goals," Evergreen Trading, LLC v. United States, 80 Fed. Cl. 122, 126 (2007).  Thus, "discovery, like all matters of procedure, has ultimate and necessary boundaries."  Hickman, 329 U.S. at 507.

### A.  RCFC 26(b)

RCFC 26(b)(1) is "the general provision governing the scope of discovery."  Sparton Corp. v. United States, 77 Fed. Cl. 10, 21 n.14 (2007).  It permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."  RCFC 26(b)(1).  RCFC 26(b) mirrors Rule 26(b) of the Federal Rules of Civil Procedure ("FRCP").[3]  Sys. Fuels, Inc. v. United States, 73 Fed. Cl. 206, 215 (2006).  The 1946 amendment to FRCP 26(b) "ma[de] clear the broad scope of examination," which included

> not only evidence for use at the trial but also inquiry into matters in themselves inadmissible as evidence but which will lead to the discovery of such evidence.  The purpose of discovery is to allow a broad search for facts, . . . or any other matters which may aid a party in the preparation or presentation of his case.

---

[3]  "[T]o the extent permitted by this court's jurisdiction," the RCFC "must be consistent with the [FRCP] . . . ."  RCFC 83(a).  Interpretation of RCFC 26 "will be guided by case law and the Advisory Committee Notes that accompany the [FRCP]."  RCFC rules committee note (2002).  Interpretation of an FRCP "informs the Court's analysis" of the corresponding RCFC.  Zoltek Corp. v. United States, 71 Fed. Cl. 160, 167 (2006).

6

FRCP 26 advisory committee note (1946 amendment); see also Int'l Paper Co. v. United States, 36 Fed. Cl. 313, 317 (1996) (citing RCFC 26 and stating that "we are similarly mindful of the generally broad scope of discovery in this court").

When FRCP 26(b)(1) was amended in 2000, the advisory committee "introduce[d] a note of caution about the provision . . . ." 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2007 (2d ed. Supp. 2009). The amendments were "intend[ed for] the parties and the court [to] focus on the actual claims and defenses involved in the action," FRCP 26(b)(1) advisory committee note (2000 amendment), whereas previously parties "were entitled to discovery of any information that was not privileged so long as it was relevant to the 'subject matter involved in the pending action,'" 6 James Wm. Moore et al., Moore's Federal Practice ¶ 26.41 (3d ed. 2008) (quoting the 1983 version of FRCP 26(b)(1)). Accordingly, the 2000 amendments "narrowed the scope of party-controlled discovery to matters 'relevant to any party's claim or defense.'" Id. (quoting FRCP 26(b)(1)). While courts would "retain[] authority to order discovery of any matter relevant to the subject matter involved in the action for good cause," the amended rule was "designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery."[4] FRCP 26(b)(1) advisory committee note (2000 amendment). Under the current standard, courts focus upon the specific claims or defenses when determining the appropriate scope of discovery. See id. However, "[t]his does not mean that a fact must be alleged in a pleading for a party to be entitled to discovery of information concerning that fact. It means that the fact must be germane to a specific claim or defense asserted in the pleadings for information concerning it to be a proper subject of discovery." 6 Moore et al., supra, ¶ 26.41.

A party's right to pretrial discovery is not unfettered. Pursuant to RCFC 26(b)(2)(C), the court must limit "the frequency or extent of discovery otherwise allowed by these rules" upon a determination that the discovery sought is unreasonably cumulative or duplicative, the requesting party had ample opportunity to obtain the information sought, or the burden or expense of the proposed discovery outweighs its likely benefit. The court may act upon its own initiative after reasonable notice or pursuant to a motion under RCFC 26(c), which is discussed in Part II.D, infra.

---

[4] Thus, where a party objected that requested discovery

goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.

FRCP 26(b)(1) advisory committee note (2000 amendment). The court's determination of the scope of discovery, when its intervention is sought by the parties, would be made "according to the reasonable needs of the action." Id.

## B.  RCFC 33

RCFC 33 governs interrogatories to parties and permits a party to serve written interrogatories upon any other party.  Specifically, RCFC 33 provides: "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts.  Leave to serve additional interrogatories may be granted to the extent consistent with RCFC 26(b)(2)."  RCFC 33(a)(1).  An interrogatory "may relate to any matter that may be inquired into under RCFC 26(b)."  RCFC 33(a)(2).  The responding party "must provide true, explicit, responsive, complete, and candid answers to interrogatories."  Hansel v. Shell Oil Corp., 169 F.R.D. 303, 305 (E.D. Pa. 1996).  Interrogatories "should be answered directly and without evasion in accordance with information that the answering party possesses after due inquiry."  8A Wright, Miller & Marcus, supra, § 2177 (2d ed. 1994).  Each answer must be made "separately and fully in writing under oath," RCFC 33(b)(3), and an evasive or incomplete answer is treated as a failure to answer, RCFC 37(a)(4).  "Misleading and evasive answers to interrogatories justify the court's viewing with suspicion the contentions of the party so answering."  Ruiz v. Hamburg-Am. Line, 478 F.2d 29, 33 (9th Cir. 1973).

## C.  RCFC 36

RCFC 36 governs requests for admission.  A party

> may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of RCFC 26(b)(1) relating to:
>
> (A) facts, the application of law to fact, or opinions about either; and
>
> (B) the genuineness of any described documents.

RCFC 36(a)(1).  Each matter must be separately stated, RCFC 36(a)(2), and a "matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection," RCFC 36(a)(3).  The parties may, pursuant to RCFC 29, stipulate to a longer or shorter response period, or one may be ordered by the court.  RCFC 36(a)(3).  Rule 36 "allows litigants to request admissions as to a broad range of matters, including ultimate facts, as well as applications of law to fact."  In re Carney, 258 F.3d 415, 419 (5th Cir. 2001).  Requests for admission are "intended to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial, the truth of which is known to the parties or can be ascertained by reasonable inquiry."  8A Wright, Miller & Marcus, supra, § 2252.  Thus, RCFC 36 "serves two vital purposes, both of which are designed to reduce trial time.  Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly to narrow the issues by eliminating those that can be."  FRCP 36 advisory committee note (1970 amendment).  "For Rule 36 to be effective in this

regard, litigants must be able to rely on the fact that matters admitted will not later be subject to challenge." In re Carney, 258 F.3d at 419. Admissions can serve as the factual predicate for summary judgment. United States v. Kasuboski, 834 F.2d 1345, 1350 (7th Cir. 1987).

### D. RCFC 26(c)

RCFC 26(c) "tempers the breadth of discovery by authorizing the court, for good cause shown, to issue a protective order 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" Boston Edison Co. v. United States, 75 Fed. Cl. 557, 561 (2007) (quoting RCFC 26(c)). Its FRCP counterpart was adopted "as a safeguard for the protection of parties and witnesses in view of the almost unlimited right of discovery given by Rule 26(b)(1)." 8 Wright, Miller & Marcus, supra, § 2036 (2d ed. 1994). RCFC 26(c) provides:

> A party or any person from whom discovery is sought may move for a protective order. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

RCFC 26(c)(1). Such an order "is directed to the broad discretion of the court." St. Matthew Publ'g, Inc. v. United States, 41 Fed. Cl. 142, 145 (1998).

RCFC 26(c), like its FRCP counterpart, "lists eight kinds of protective orders that may be made," although the court may also "be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule." 8 Wright, Miller & Marcus, supra, § 2036. The court may, for example, order, among other things, that: (1) discovery may not be had at all; (2) discovery may be had only on specified terms and conditions; (3) discovery may be had by a method of discovery other than that selected by the party seeking discovery; or (4) discovery may be limited in scope to certain matters. RCFC 26(c)(1)(A)-(D). Where the court denies a motion for protective order either in whole or in part, it may, "on just terms, order that any party or person provide or permit discovery."[5] RCFC 26(c)(3).

RCFC 26(c) requires that "good cause" be shown for issuance of a protective order. The burden of demonstrating "good cause" rests with the party seeking to shield itself from discovery. Ford Motor Co. v. United States, 84 Fed. Cl. 168, 170 (2008); Capital Props., Inc. v. United States, 49 Fed. Cl. 607, 611 (2001). In order to establish "good cause," a party must show "that the discovery request is considered likely to oppress an adversary or might otherwise impose an undue burden." Sparton Corp. v. United States, 44 Fed. Cl. 557, 561 (1999); see also Forest Prods. Nw., Inc. v. United States, 62 Fed. Cl. 109, 114 (2004) (indicating that good cause is

---

[5] Additionally, RCFC 26(c)(3) provides that "RCFC 37(a)(5) applies to the award of expenses."

established "by specifically demonstrating that 'disclosure will cause a clearly defined and serious injury'" (quoting Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995))), aff'd, 453 F.3d 1355 (Fed. Cir. 2006). The "'good cause' requirement is strict. . . . [T]he party . . . must make a particularized factual showing of the harm that would be sustained if the court did not grant a protective order."  Arthur R. Miller, Confidentiality, Protective Orders, and Public Access to the Courts, 105 Harv. L. Rev. 427, 433 (1991). "[T]he party seeking the protective order must show good cause by demonstrating a particular need for protection." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986).  Thus, broad allegations of harm, unsubstantiated by specific examples, are insufficient to justify issuance of a protective order.[6] Forest Prods. Nw., Inc., 62 Fed. Cl. at 114. "[C]ourts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause."  8 Wright, Miller & Marcus, supra, § 2035.

Courts may consider several factors, "which are neither mandatory nor exhaustive," Glenmede Trust Co., 56 F.3d at 483, in their determination of whether to issue a protective order. These include:

> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to the public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefiting from the order of confidentiality is a public entity or official; and (7) whether the case involves issue[s] important to the public.

Forest Prods. Nw., Inc., 62 Fed. Cl. at 114 n.9 (citing Glenmede Trust Co., 56 F.3d at 483). The trial court "is best situated to determine what factors are relevant to the dispute . . . ." Glenmede Trust Co., 56 F.3d at 483. "While the court may limit discovery, the court should do so based on

---

[6] Furthermore,

> the objecting party must do more than "simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad." The objecting party bears the burden of demonstrating "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, [unduly] burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden."

Lamoureux v. Genesis Pharmacy Servs., Inc., 226 F.R.D. 154, 158-59 (D. Conn. 2004) (quoting Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 42 (S.D.N.Y. 1984)) (alterations in original) (citation omitted), quoted in Pac. Gas & Elec. Co. v. United States, 69 Fed. Cl. 323, 325-26 (2005).

evidence of the burden involved, not on a mere recitation that the discovery request is unduly burdensome[.]" Pac. Gas & Elec. Co., 69 Fed. Cl. at 325. Although protective orders "are not exceptional with regard to interrogatories and requests to produce," it is "difficult to show grounds for ordering that discovery not be had when it is a deposition that is sought." 8 Wright, Miller & Marcus, supra, § 2037.

### III. DISCUSSION

### A. The Parties' Arguments

The government asserts that Lakeland's request for discovery was limited to the ADA defense and that Lakeland "did not indicate that it was unable to rebut the United States' motion for summary judgment on any other issue." Def.'s Mots. 2; see also United States' Reply Br. Supp. Def.'s Mots. ("Def.'s Reply") 1 (arguing that Lakeland requested additional discovery "for the very narrow purpose of obtaining information pertaining to applicable appropriations or funding for Duncan Nyanjong's medical care while he resided at Lakeland Nursing Home"), 3 ("Lakeland never identified that it needed additional discovery regarding whether Mr. Nyanjong was properly released from custody"). According to the government, it "thoroughly explained the basis for its [ADA] defense in its supplemental discovery responses," Def.'s Mots. 2, noting that Lakeland requested–and the United States provided–information about the manner in which funds are appropriated for the care of ICE detainees," Def.'s Reply 3.

The government indicates that its responses to Lakeland's most recent discovery requests contained explanations that

> the United States could not have promised to 'permanently' pay for Mr. Nyanjong's care because [DHS] and [ICE], through [their] medical subsidiary [DIHS,] are not authorized to provide medical care for undocumented aliens who are not in ICE custody. Accordingly, funds are not appropriated to ICE to pay for the medical care of undocumented aliens who are not in ICE custody.

Def.'s Mots. 2. The government explains that "[i]f the alien is no longer in ICE custody, then there are no longer funds available from ICE to pay for the detainee's care" and that "funds are appropriated to ICE to pay for the medical care of ICE detainees; funds are not appropriated to ICE to pay for the medical care of any other undocumented aliens who are not in ICE custody." Def.'s Reply 4. It asserts that Lakeland has therefore "already obtained the discovery it requested . . . regarding the basis for the United States' ADA defense." Def.'s Mots. 4; see also id. at 6 ("The United States . . . has provided Lakeland with discovery and information regarding the legal and factual basis for the United States' ADA defense, in accordance with the Court's Order dated December 30, 2008.").

According to the government, Lakeland's most recent discovery requests "do not address the manner in which funds are appropriated for the medical care of aliens in ICE custody."

11

Def.'s Reply 4.  Instead, the government claims, Lakeland's requests concern "whether Mr. Nyanjong was properly released from ICE custody," id.; accord Def.'s Mots. 2, an issue that the government states was previously addressed during discovery and briefing:

> Not only was Lakeland aware that whether Mr. Nyanjong was properly released from ICE custody was an issue in this case, Lakeland also took discovery regarding that issue and briefed the issue in its own summary judgment motion. Specifically, Lakeland served discovery on the United States seeking information about whether Mr. Nyanjong was properly released from custody and individuals who had information about whether Mr. Nyanjong was properly released from custody.  The United States responded to that discovery and provided Lakeland with the names of all individuals whom [the] United States identified as being involved in the decision to release Mr. Nyanjong from custody.  Additional discovery would merely duplicate discovery that Lakeland has already obtained.[7]

Def.'s Mots. 5-6 (footnote added) (citation omitted).  Moreover, according to the government, "Lakeland's discovery requests are duplicative of its previous discovery requests and are abusive given that the United States has already adequately explained the basis for its [ADA] defense . . . ."  Def.'s Reply 3.  Whereas Lakeland argues that the government "relies upon the release issue in support of its ADA defense," Pl.'s Opp'n 4, the government argues that

> [w]hile Lakeland may not have known that the ADA was the legal basis for the United States' contention that ICE could not expend funds for the care of detainees who are not under its custody or control, Lakeland was well aware that the United States contended that it had properly released Mr. Nyanjong from ICE custody and that releasing Mr. Nyanjong from custody absolved the United States of the responsibility to reimburse Lakeland for Mr. Nyanjong's care.

Def.'s Mots. 4; see also Def.'s Reply 4 (arguing that the government's ADA defense "neither created an issue of whether Mr. Nyanjong was properly released from custody, nor did it call for

---

[7] The government notes that Lakeland currently seeks to depose Christopher Jacobs, who signed the Order to Detain or Release Alien, "presumably regarding whether Mr. [Nyanjong] was properly released from ICE custody . . . ."  Def.'s Mots. 3.  Lakeland asserts that the government "cannot genuinely dispute that ICE/DIHS officials, including Christopher Jacobs . . . , knew at the time that Nyanjong was admitted to Lakeland . . . that Nyanjong was mentally incompetent, physically ill and impaired, and unable to care for himself."  Pl.'s Opp'n 4.  According to the government, Lakeland seeks testimony from Mr. Jacobs regarding "an issue that Lakeland has known about throughout the course of this litigation . . . when Lakeland has known that Mr. Jacobs was an important witness for the United States since at least December 31, 2007[,] and arguably as early as 2005 . . . ."  Def.'s Reply 3 n.2; see also Compl. Ex. C (containing an October 7, 2005 letter from Lakeland's counsel to Commander Seligman, as well as Mr. Jacobs and William Clearly, both of whom were part of ICE Division of Detention and Removal).

the re-opening of discovery on an issue where discovery had already taken place and which was fully briefed in the parties' summary judgment motions"). The government also indicates that Lakeland exceeded the number of interrogatories permitted under the RCFC. Def.'s Mots. 3.

According to Lakeland, the government asserted in its motion for summary judgment that "no one at DIHS or ICE could authorize payment for healthcare of a detainee after the detainee was released from custody," Pl.'s Opp'n 4 (citing Def.'s Mot. Summ. J. 12), and, as a separate issue, that "'even if otherwise enforceable, the open-ended nature of Lakeland's alleged 'contract' would violate the [ADA],'" id. (quoting Def.'s Mot. Summ. J. 13). It indicates that recently obtained discovery suggests that the contract at issue in this case did not violate the ADA because funds were appropriated. Id. at 2. However, Lakeland argues that the government's "ever-changing defense" now centers upon Commander Seligman's lack of authority to obligate the expenditure of funds for the healthcare of detainees who were not in ICE custody or control. Id. As such, Lakeland believes that the government's "ADA defense now hinges upon Mr. Nyanjong being properly released from ICE custody." Id.; see also id. at 3 (asserting that the government's "ADA defense is now contingent upon its allegation that Mr. Nyanjong was released, and released properly, from ICE custody"), 4 (arguing that the government "relies upon the release issue in support of its ADA defense"). Nevertheless, Lakeland claims that "defendant's argument that Mr. Seligman could not obligate funds for the healthcare of detainees who were not in ICE custody or control is a red herring" because "at the time the contract was entered into, there was no intention or expectation that [Mr.] Nyanjong could or would be released from ICE custody." Id. at 2. Lakeland also asserts that the government's position to the contrary "makes the discovery which Lakeland propounded and which defendant seeks to quash relevant, proper, and within the scope of this Court's Order allowing additional discovery." Id. at 5.

### B. The Court Is Satisfied That the Government Conferred or Attempted to Confer in Good Faith With Lakeland in an Effort to Resolve the Dispute Prior to the Filing of the Instant Motions

RCFC 26(c)(1) requires, as discussed above, that the party moving for a protective order include a certification that it has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court intervention. In 1993, the advisory committee indicated that revisions to FRCP 26(c) "require[] that before filing a motion for a protective order the movant must confer–either in person or by telephone–with the other affected parties in a good faith effort to resolve the discovery dispute without the need for court intervention." FRCP 26(c) advisory committee note (1993 amendment). In its motion for a protective order, the government states:

> On May 6, 2009, the United States informed Lakeland that it believed that Lakeland's additional discovery requests were inappropriate, as they were duplicative of previous discovery that Lakeland had taken and that the requests were beyond the scope of discovery that was ordered by the Court. In addition,

13

>   the United States informed Lakeland that it had already exceeded the specified
>   number of interrogatories permitted by the Court's rules and the United States
>   requested that Lakeland withdraw its additional discovery requests. Lakeland
>   declined to do so, also informed the United States that it planned to depose
>   Christopher Jacobs, . . . and the United States filed this motion.

Def.'s Mots. 3 (footnote omitted). Later, the government represents that it "is working with Lakeland to enter into a stipulation in order to avoid unnecessary discovery on the United States' ADA defense." Id. at 6. The court deems this latter representation as satisfying the good faith conferment requirement of RCFC 36(c)(1). Although the government has not specifically attested to having conferred in good faith with Lakeland prior to the filing of the instant motions, it is apparent that the parties, at the very least, discussed the dispute to some degree. Because the parties conferred with regard to the discovery issues arising from the court's December 30, 2008 order, the court construes the government's statement as having satisfied the certification requirement of RCFC 36(c)(1). Cf. Williams v. The Art Inst. of Atlanta, No. 1:06-CV-0285-CC/AJB, 2006 WL 3694649, at *15 (N.D. Ga. Sept. 1, 2006) (determining that the statement "'Defendant endeavored to enter into a stipulated protective order with Plaintiff to no avail'" contained in the defendant's motion for a protective order failed to meet the certification requirement of FRCP 26(c), but ultimately considering–and granting–the defendant's motion). But see Strange v. Les Schwab Tire Ctrs. of Ore., Inc., No. C06-045RSM, 2009 WL 1608454, at *1 (W.D. Wash. June 9, 2009) (striking the plaintiff's motion for a protective order because it "did not include a proper Rule 26(c)(1) certification of an effort to meet and confer" and rejecting the plaintiff's argument that her failure to include the certification was a "simple technicalit[y] that should be overlooked").

### C. The Government Has Not Shown Good Cause for the Issuance of a Protective Order

As discussed in Part II.D, supra, the party seeking to shield itself from discovery holds the burden of showing good cause for the issuance of a protective order. Here, the government argues that Lakeland's discovery requests are duplicative of prior discovery related to whether Mr. Nyanjong was properly released from custody and fall outside the scope of the court's December 30, 2008 order.[8] Def.'s Mots. 6; see also Def.'s Reply 2 (stating that "[g]ood cause

---

[8] For example, the government highlights several interrogatories that it believes are identical. Compare Def.'s Mots. Ex. D at 4 (containing interrogatory number 7 in Lakeland's first set of interrogatories, which states: "Please describe the procedures which ICE is required to follow in releasing ICE detainees, including the procedures used for releasing detainees who are mentally or physically incompetent and/or who are unable to care for themselves."), and id. at 5 (containing interrogatory number 8 in Lakeland's first set of interrogatories, which states: "Please describe the procedures which ICE usually follows in releasing ICE detainees, including the procedures used for releasing detainees who are mentally or physically incompetent and/or who are unable to care for themselves."), with Def.'s Mots. Ex. C at 2 (containing interrogatory number 4 in Lakeland's third set of interrogatories, which states: "Please describe the procedure

exists for granting the United States' motion because Lakeland is attempting to take discovery that is beyond the scope of both its [RCFC] 56(f) discovery request and the Court's Order dated December [30], 2008"). It cites Boye v. United States, No. 07-195C, 2008 WL 1990866 (Fed. Cl. Mar. 4, 2008), for the proposition that the Court of Federal Claims has previously granted the government's request for a protective order "in similar instances where plaintiff's discovery requests exceeded what was contemplated in a previous discovery order." Def.'s Mots. 3. As an initial matter, the court notes that the government's motion fails to assert that good cause exists for granting it relief. Rather, the government asserts in its reply brief that a protective order "is warranted because additional discovery and depositions are unnecessary, expensive[,] and therefore unduly burdensome." Def.'s Reply 3.

Contrary to the government's intimation that Lakeland bears the burden of "address[ing] why discovery on an issue that has been fully briefed is warranted," Def.'s Reply 4-5, it is the government that bears the burden of demonstrating good cause for the issuance of a protective order. Ford Motor Co., 84 Fed. Cl. at 170. As noted above, a party seeking a protective order must do more than assert that interrogatories are burdensome. Lamoureux, 226 F.R.D. at 158. The government has not made such a showing. While it asserts that Lakeland's discovery requests are "abusive," Def.'s Reply 3, the government fails to supports this bald assertion with either specific examples and explanations or evidence demonstrating how it would be harmed if the court did not grant the relief it seeks. Moreover, notwithstanding the government's contention, a mere showing that the discovery may involve inconvenience or expense does not establish good cause under RCFC 26(c). See U.S. EEOC v. Caesars Entm't, Inc., 237 F.R.D. 428, 432 (D. Nev. 2006) (discussing FRCP 26(c)).

Additionally, the government's reliance upon Boye is misplaced. In that case, the government sought a protective order in connection with the plaintiffs' "request for twenty-five years worth of documents . . . and an attempt to obtain material that is irrelevant to the issues

---

which was utilized by ICE in 2005 to release an alien from ICE custody[.]"); compare Def.'s Mots. Ex. D at 7 (containing interrogatory number 14 in Lakeland's first set of interrogatories, which states: "Please list any other ICE detainees, who were mentally or physically incompetent and/or could not take care of themselves, whom ICE has released from custody prior to finding a funding source for the detainees['] healthcare after release."), with Def.'s Mots. Ex. C at 3 (containing interrogatory number 13 in Lakeland's third set of interrogatories, which states: "Has ICE ever released from custody a detainee who was in Columbia Care Center and who was incompetent to stand trial and unable to care for themselves?"). It also asserts that it provided to Lakeland documents that illuminate why the government did not believe that Mr. Nyanjong posed a danger to himself or to the community, see Def.'s Reply Ex. 1, which the government believes provides the information that Lakeland seeks, see Def.'s Reply 1 n.1. Additionally, the government argues that "much of the information contained in the Government's responses to Lakeland's First Set of Interrogatories provides the same information that Lakeland is seeking in its Third Set of Interrogatories and Third Set of Requests for Admissions." Id.

15

about which the court permitted discovery . . . ."[9]  2008 WL 1990866, at *4.  The court, noting that the plaintiffs did "not indicate how the requested documents and deposition will provide them the evidence necessary to establish jurisdiction in this court pursuant to their third-party beneficiary theory, or otherwise," id., determined that plaintiffs did not require twenty-five years of contracts and related testimony in order to rebut the government's statute of limitations argument, id. at *5.  Despite that determination, the court found that a limited amount of discovery was appropriate and permitted plaintiffs to obtain and present evidence in support of their position that the court possessed jurisdiction over their complaint, id. at *1.  Accordingly, the court granted in part the government's motion for a protective order and substantially limited the amount of discovery the plaintiffs could obtain.  By contrast, Lakeland, unlike the Boye plaintiffs, has not propounded such overly broad discovery requests.  Rather, the discovery Lakeland seeks spans a period of time that is much more narrow than the one permitted by the court in Boye.  Compare Def.'s Mots. Ex. C (containing Lakeland's third set of interrogatories and requests for admission, which primarily involve actions occurring in or about 2005 and, at the earliest, 2001), with Boye, 2008 WL 1990866, at *6 (authorizing discovery related to the interpretation of portions of the relevant contracts for the years 2001 through 2007).  Furthermore, proceedings in Boye were at the motion to dismiss stage, and the court therefore took great care to keep the discovery as narrow as possible.  Boye, therefore, is inapposite to the circumstances presented here, and the court rejects the government's contention that Boye and the instant case involve "similar instances."  Def.'s Mots. 3.

Next, the government argues that Lakeland "fully briefed the issue of whether Mr. Nyanjong was properly released from ICE custody in its own summary judgment motion . . . ." Id. at 2.  Lakeland, however, expressed dissatisfaction with the discovery it received in connection with its motion for partial summary judgment, explaining that the government furnished limited documentation in response to Lakeland's document requests and discussing two specific documents that Lakeland contends are incomplete and therefore legally ineffective.  See Pl.'s Mem. Supp. Mot. Partial Summ. J. & Mot. In Limine 16-17.  Moreover, Lakeland need not be constrained by the government's contention that it fully responded to Lakeland's requests by producing all relevant evidence.  "Parties to litigation do not have to accept their opponent's statement that all relevant evidence has been produced . . . ."  Iris Corp. Berhad v. United States, 84 Fed. Cl. 489, 494 (2008).  The court granted Lakeland's request for additional discovery related to the government's ADA defense.  Because the government presents an alternative or nuanced theory in support of its ADA defense, Lakeland may obtain discovery related thereto

---

[9]  Plaintiffs requested discovery to assist them in opposing the government's motion to dismiss.  Boye, No. 07-195C, 2008 WL 1990866, at *1.  In their complaint, plaintiffs, current and former employees of the Navajo Nation Division of Public Safety, alleged that the Bureau of Indian Affairs ("BIA") of the United States Department of the Interior breached contracts that required the BIA to pay plaintiffs wages and benefits equal to the wages and benefits paid to their BIA counterparts.  Id.  Plaintiffs contended that the breach was of a continuing nature for which the statute of limitations was inapplicable.  Id. at 5; see also id. ("Plaintiffs respond that their 'continuing tort' allegation justifies the discovery of twenty-five years of contracts.").

16

pursuant to the court's December 30, 2008 order. Regardless of whether Lakeland previously pursued discovery in a particular area, it has demonstrated a need to develop further that aspect of its case as a direct result of the government's nuanced ADA defense. The court therefore concludes that the discovery Lakeland seeks is not unreasonably cumulative or duplicative, and the court determines that Lakeland did not necessarily have an ample opportunity to obtain previously all of the information it now seeks in order to respond to the government's ADA defense. RCFC 26(b)(2)(C)(i)-(ii).

In light of the government's failure to show how it is oppressed or substantially harmed by Lakeland's discovery requests, the court will permit Lakeland an opportunity to seek the fact-finding it needs.[10] Accordingly, if Lakeland desires answers to its third set of interrogatories, then it should follow the appropriate procedures as described in Part III.D, infra.[11] With respect to Lakeland's requests for admission, "[i]t is fundamental that parties may simultaneously utilize any or all of the discovery mechanisms authorized by the rules." Iris Corp. Berhad, 84 Fed. Cl. at 494. Since proceedings are at the summary judgment phase, Lakeland's requests for admission

---

[10] The court notes that the government, in response to previously served interrogatories, objected that certain interrogatories were duplicative and directed Lakeland to its responses to other interrogatories it believed were related. See, e.g., Def.'s Mots. Ex. A at 3 (containing the government's response to interrogatory number 2 in Lakeland's second set of interrogatories, which states, in part: "Defendant objects to interrogatory no. 2 on the grounds that it is duplicative of interrogatory no. 1. Subject to that objection, see our response to interrogatory no. 1"), 5 (containing the government's response to interrogatory number 6 in Lakeland's second set of interrogatories, which states, in part: "Defendant further objects to interrogatory no. 6 as duplicative of interrogatory no. 1. Subject to those objections, as described in response to interrogatory no. 1, funds are appropriated by Congress on an annual basis"), 6 (containing the government's response to interrogatory number 10 in Lakeland's second set of interrogatories, which states, in part: "Defendant further objects to interrogatory no. 10 as duplicative of interrogatory no. 9. Subject to those objections, see our objections and response to interrogatory no. 9"), 8 (containing the government's response to interrogatory number 12 in Lakeland's second set of interrogatories, which states, in part: "Defendant further objects to interrogatory no. 12 as duplicative of questions asked in Plaintiff's First Set of Interrogatories and defendant's response dated December 31, 2007. Defendant refers plaintiff to its responses to interrogatory nos. 19, 20, and 21"). At no time did the government file a motion for a protective order concerning these allegedly duplicative interrogatories. Thus, if responding to these allegedly duplicative interrogatories was not burdensome to the government at that time, then responding to allegedly duplicative interrogatories is not burdensome at this juncture. Accordingly, the burden or expense of Lakeland's proposed discovery upon the government does not outweigh its likely benefit. RCFC 26(b)(2)(C)(iii).

[11] The government has not responded to Lakeland's third set of interrogatories, which contains a total of sixteen interrogatories that are the subject of the instant motion. See Def.'s Mots. Ex. C at 1-4.

are appropriate, see Kasuboski, 834 F.2d at 1350, and may be useful in any supplemental briefing on the government's ADA defense. Accordingly, the government's motion to quash Lakeland's third set of requests for admission and third set of interrogatories is denied in part.

Finally, the government seeks a protective order in connection with Lakeland's desire to depose Mr. Jacobs, the government official who allegedly executed the order releasing Mr. Nyanjong from United States custody. Compl. ¶ 19. The government opines that Mr. Jacobs will be questioned about "whether Mr. Nyanjong was properly released from ICE custody," Def.'s Mots. 3, an area it believes falls outside the scope of the court's December 30, 2008 order, id. at 3, 4-5. Again, the government proffers no explanation as to how or why it would be harmed in connection with defending this deposition. And, the court notes, this testimony may well provide critical evidence concerning the government's ADA defense. "As a general rule, courts will not grant protective orders that prohibit the taking of deposition testimony," Caesars Entm't, Inc., 237 F.R.D. at 432, and "[a] protective order will not be issued precluding . . . depositions solely because the testimony may prove repetitive," Iris Corp. Berhad, 84 Fed. Cl. at 494 (citing Evergreen Trading, LLC, 80 Fed. Cl. at 136). Lakeland may seek testimony from Mr. Jacobs to the extent that it relates to the government's ADA defense. Accordingly, and for the reasons discussed above, the government's motion for a protective order is denied.

### D. Lakeland Must Seek Leave From the Court Before It Propounds Interrogatories That Exceed the Number Permitted by RCFC 33

The government states that Lakeland "sought more discovery on the United States' ADA defense than it has on any other issue in this case," having served upon it twenty-eight additional interrogatories and twenty-six requests for admission. Def.'s Reply 3 n.2; see also id. (noting that Lakeland also seeks to depose Mr. Jacobs). According to the government, Lakeland previously propounded twenty-two interrogatories and twenty-one requests for admission, and conducted one deposition during the initial discovery period. Id.; see also Def.'s Mots. Ex. D (containing twenty-two interrogatories). The government indicates that Lakeland served thirty-six interrogatories to which the government provided responses. Def.'s Mots. 3 n.1; cf. Def.'s Mots. Exs. A, D (containing the government's supplemental responses to Lakeland's second set of interrogatories–a total of twelve–and its responses to Lakeland's original set of twenty-two interrogatories, respectively). Lakeland acknowledges that it propounded twenty-eight additional interrogatories upon the government following the court's December 30, 2008 order, see Def.'s Mots. Exs. A, C at 1-4 (containing twelve interrogatories to which the government responded and sixteen interrogatories to which the government has not responded, respectively), but justifies doing so based upon RCFC 26(b)(2), RCFC 33, and the court's December 30, 2008 order, see Pl.'s Opp'n 5 & n.2.

As noted in Part II.B, supra, RCFC 33 places a limitation on the number of interrogatories that Lakeland may serve upon the government. This limitation may be modified through court order or stipulation by the parties. See RCFC 33(a)(1) (indicating that leave to serve additional interrogatories may be granted to the extent consistent with RCFC 26(b)(2)). Here, the court's

December 30, 2008 order permitted Lakeland to "pursue discovery in all forms allowed by the RCFC . . . ." Order at 4, Dec. 30, 2008. The court's order did not, either explicitly or implicitly, expand the number of interrogatories that Lakeland could propound upon the government. Rather, the court referenced interrogatories, along with requests for production of documents and depositions, as examples of discovery permitted under the RCFC. To the extent that Lakeland relies upon the court's December 30, 2008 order as authorizing greater than twenty-five written interrogatories absent a stipulation by the parties or court order, Lakeland is mistaken.

Lakeland may move the court, pursuant to RCFC 33(a)(1), for leave to serve additional interrogatories beyond the twenty-five permitted under the rule. Even though the government previously responded to all but sixteen interrogatories, Lakeland did not file a motion for leave to serve additional interrogatories.[12] Absent a stipulation by the parties or a court order, the government is not required to respond to the additional sixteen interrogatories that comprise Lakeland's third set of interrogatories.[13] Accordingly, the government's motion to quash Lakeland's third set of requests for admission and third set of interrogatories is granted in part.

### IV.  CONCLUSION

For the reasons discussed above, the government's motion for a protective order is **DENIED** and the government's motion to quash Lakeland's third set of requests for admission and third set of interrogatories is **GRANTED IN PART** and **DENIED IN PART** as follows:

   1. The government is not required to respond to Lakeland's third set of interrogatories in the absence of a stipulation or court order permitting Lakeland to serve additional interrogatories. If Lakeland seeks the information encompassed by its third set of interrogatories and the parties have not entered into a stipulation, then it may file, by no later than **Friday, July 17, 2009**, a motion for leave to serve upon the government its third set of interrogatories in its current form.

   2. The government shall respond, in accordance with RCFC 36 and by no later than **Friday, July 24, 2009**, to Lakeland's third set of requests for admission.

   3. Lakeland may notice the deposition of Christopher Jacobs. Lakeland's inquiries shall be limited to matters related to the government's ADA defense, including the issue of Mr. Nyanjong's release from ICE custody.

---

   [12] The government, however, objected that certain interrogatories exceeded the number permitted under RCFC 33. See Def.'s Mots. Ex. A.

   [13] The government represents in its motion that it "is working with Lakeland to enter into a stipulation in order to avoid unnecessary discovery on the United States' ADA defense." Def.'s Mots. 6.

4.  All discovery shall conclude by no later than **Friday, August 28, 2009**.  The parties shall, by no later than **Friday, September 11, 2009**, file a joint status report proposing additional proceedings in this case.

Notwithstanding its discretionary authority, pursuant to RCFC 36(c)(3) and RCFC 37(a)(5), to apportion reasonable expenses in connection with the government's motion, the court finds no reason that justifies an award of expenses under the circumstances presented here.

    **IT IS SO ORDERED.**

s/ Margaret M. Sweeney  
MARGARET M. SWEENEY  
Judge
